00001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA


## COMPLAINT


## EXCERPTS OF RECORD


## EXHIBITS NOS.  101-339

FERIAL ARDALAN – CASE INFORMATION

| AGENCY CASE # | EEOC # | IRD INVESTIGATOR | STATUS |
|---|---|---|---|
| ARPOM04OCT07114 | 370-2005-00540X & 370-2006-00031X | CLAUDE FRANSIS | --EEO DECISION DTD 05/02/06 NO DISCRIMINATION – AJ PLAYER --FINAL AGENCY ACTION DTD 05/19/06 IMPLEMENT EEOC DECISION --COMPLAINANT APPEALS DECISION 06/28/06 --EEOC OFO DECISION, APPEAL #0120064058 DTD 03/20/08 NO DISCRIMINATION --COMPLAINANT'S REQUEST FOR RECONSIDERATION DTD 04/19/08 (NOTE: ARPOM04OCT07114 CONSOLIDATED WITH ARPOM05MAR07655) |
| ARPOM05MAR07655 | 370-2006-00031X & 370-2005-00540X | LYDIA GRANDBOIS | --EEOC DECISION DTD 05/02/06 NO DISCRIMINATION – AJ PLAYER --FINAL AGENCY ACTION DTD 05/19/06 IMPLEMENT EEOC DECISION --COMPLAINANT APPEALS DECISION 06/28/06 --EEOC OFO DECISION, APPEAL #0120064058 DTD 03/20/08 NO DISCRIMINATION --COMPLAINANT'S REQUEST FOR RECONSIDERATION DTD 04/19/08 (NOTE: ARPOM05MAR07655 CONSOLIDATED WITH ARPOM04OCT07114) |
| ARPOM06JUN02179 | 550-2007-00105X | MARIE ROBICHAU | --EEOC DECISION DTD 03/21/08 - NO DISCRIMINATION – AJ PLAYER --FINAL AGENCY ACTION DTD 04/02/08 IMPLEMENT EEOC DECISION: |
| ARPOM07FEB00475 | 550-2007-00417X | JO ANNE BURSON | --COMPLAINANT'S REQUEST FOR HEARING DTD 09/07/07 --EEOC RECEIVED CASE FILE 09/21/07 --PENDING EEOC DECISION (NOTE: ARPOM07FEB00475 CONSOLIDATED WITH ARPOM07AUG03511) |
| ARPOM07AUG03511 | PENDING | MARGARET O'KEEFFE | --COMPLAINANT'S REQUEST FOR HEARING DTD 03/11/07 --PENDING EEOC DECISION (NOTE: ARPOM07AUG03511 CONSOLIDATED WITH ARPOM07FEB00475) |
| ARPOM09OCT05023 | 0120110347 0520120585 EEOC# 0120110347 | Hellen Warren | Appeal Denied Request for Reconsideration | Subject of this Action. |
| ARPOM11JUL03380 | 0120120302 0520130011 EEOC# 0120120302 | DLI EEO Dismissed | Appeal Denied. EEOC Denied Request for Reconsideration. | Subject of this Action. |

000101



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Ferial K. Ardalan,
Complainant,

v.

John M. McHugh,
Secretary,
Department of the Army,
Agency.

Request No. 0520120585

Appeal No. 0120110347

Agency No. ARPOM09OCT05023

<u>DENIAL</u>

Complainant timely requested reconsideration of the decision in <u>Ferial K. Ardalan v. Department of the Army</u>, EEOC Appeal No. 0120110347 (July 19, 2012). EEOC Regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. <u>See</u> 29 C.F.R. § 1614.405(b).

In the appellate decision, Complainant alleged she was retaliated against when she was not hired for three positions. The Commission affirmed the Agency's decision, finding that Complainant failed to establish that she was retaliated against as alleged. Complainant requests that we reconsider our decision.

In her request for reconsideration, Complainant reiterates arguments previously made on appeal. We remind Complainant that a "request for reconsideration is not a second appeal to the Commission." <u>Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110)</u>, 9-17 (November 9, 1999). A reconsideration request is an opportunity to demonstrate that the previous decision involved a clearly erroneous interpretation of material fact or law; or (2) will have a substantial impact on the policies, practices, or operations of the Agency. Here, we find that Complainant failed to do so. The Agency indicated that its regulations forbid the re-employment of any former employee who previously was removed for cause. Complainant, the record indicates, was removed for cause in 1995. Because Complainant was unable to establish pretext, we find the previous decision correctly found no

2                                    0520120585

discrimination.  After reviewing the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(b), and it is the decision of the Commission to deny the request.  The decision in EEOC Appeal No. 0120110347 remains the Commission's decision.  There is no further right of administrative appeal on the decision of the Commission on this request.

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0610)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision.  You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision.  If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title.  Failure to do so may result in the dismissal of your case in court.  "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

## RIGHT TO REQUEST COUNSEL (Z0610)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request from the Court that the Court appoint an attorney to represent you and that the Court also permit you to file the action without payment of fees, costs, or other security.  See Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c).  The grant or denial of the request is within the sole discretion of the Court.  Filing a request for an attorney with the Court does not extend your time in which to file a civil action.  Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File a Civil Action").

FOR THE COMMISSION:

_Carlton M. Hadden_
Carlton M. Hadden, Director
Office of Federal Operations

_DEC 1 3 2012_
Date

000103

3                                              0520120585

## CERTIFICATE OF MAILING

For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.  I certify that this decision was mailed to the following recipients on the date below:

Ferial K. Ardalan
POB  OD
Pacific Grove, CA  93950


Department of the Army
Director, EEO Compliance and Complaints Review, (EEOCCR)
ATTN: SAMR-EO-CCR (Spurgeon A. Moore)
5825 21st Street, Bldg 214, Room 129
Fort Belvoir, VA 22060-5921


_DEC 1 3 2012_
Date

_Eleanor M. Williams_
Equal Opportunity Assistant

000104


**YAHOO!** MAIL
Classic

**Request Omission of the Opposition to Motion for Reconsieration from the Record**

Monday, September 24, 2012 11:34 AM

**From:** "Ferial Ardalan" <ferialardalan@sbcglobal.net>
**To:** "Carlton Hadden" <CARLTON.HADDEN@EEOC.GOV>
**Cc:** "Michael Halperin" <michael.halperin@us.army.mil>

September 24, 2012

Re: OFO 0120110347

Dear Mr. Hadden:

Please be advised that the on Saturday, September 22, 2012, I received a copy of the Opposition to Request for Reconsideration drafted and signed by Mr. Michael Halperin, the DLI labor counsel. In the past, Mr. Halperin was the one who indeed, and behind the scenes, drafted such documents for the signature of Mr. Spoorgeon A, Moore; however, this time, he has drafted; has signed it; has attached a Certificate of Service signed by the DLI EEO Specialist, Jennifer, and had faxed these copies to the office of Mr. Spoorgeon's office in Arlington, VA, so that the staff would mail the package back to me!

Furthermore, due to the poor qualify of the print of the text which has been a copy of the print out of Mr. Halperin's facsimile transmission to the EEOCCRA, it has been difficult to read the poor quality print and/or to understand its contents.

I hereby oppose to the Opposition, as follows:

1) Your Decision on the above captioned Appeal has always been produced to Mr. Moore, Director of EEOCCRA, and not Mr. Halperin, who indeed, should not have had any role in the Request for reconsideration stage of the Appeals processing at the EEOC. I had sent my Request for Reconsideration to Mr. Spurgeon in Arlington and not to Mr. Halperin in Monterey, CA. If Mr. Halperin indeed had any jurisdiction on the processes of the request for reconsideration, he could have just mailed it to me here in Monterey where he is stationed and not faxed it to Arlington so that the envelope would have the EEOCCRA address in Arlington, VA, when it was mailed to me.

I believe Mr. Spoorgeon, by the review of the contents of my Request for Reconsideration which has included the DLI management's overlook on the gross sexual misconduct by a Major on the federal premises, has declined to have anything to do with this Case, for which reason Mr. Halperin has decided to sign the Opposition himself.

Please note: In view of the fact that the Opposition to Motion for Reconsideration has been produced by Mr. Halperin who has had no jurisdiction on the production of the Motion for Reconsideration, thereby, invalid, I request the EEOC to exclude from the record this Response/Opposition.

I am hoping to receive your favorable response to my above request by dismissing the above response to Motion for Reconsideration.

Sincerely,

Ferial K. Ardalan

000104

000107

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Ferial K. Ardalan,
Complainant,

v.

John M. McHugh,
Secretary,
Department of the Army,
Agency.

Request No. 0520130011

Appeal No. 0120120302

Agency No. ARPOM11JUL03380

<u>DENIAL</u>

Complainant timely requested reconsideration of the decision in <u>Ferial K. Ardalan v.</u> <u>Department of the Army</u>, EEOC Appeal No. 0120120302 (August 23, 2012).   EEOC Regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision where the requesting party demonstrates that:  (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency.  <u>See</u> 29 C.F.R. § 1614.405(b).

After reviewing the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(b), and it is the decision of the Commission to deny the request.  The decision in EEOC Appeal No. 0120120302 remains the Commission's decision.[1]  There is no further right of administrative appeal on the decision of the Commission on this request.

---

[1] We remind Complainant that a "request for reconsideration is not a second appeal to the Commission."  Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110) (rev. Nov. 9, 1999), at 9-17.  A reconsideration request is an opportunity to demonstrate that the previous decision involved a clearly erroneous interpretation of material fact or law; or (2) will have a substantial impact on the policies, practices, or operations of the Agency.  Here, we find no evidence that Complainant has met the criteria for reconsideration with regard to the previous decision's affirming the Agency's dismissal of her complaint for abuse of process.

2                                            0520130011

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0610)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision.  You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision.  If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title.  Failure to do so may result in the dismissal of your case in court.  "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

## RIGHT TO REQUEST COUNSEL (Z0610)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request from the Court that the Court appoint an attorney to represent you and that the Court also permit you to file the action without payment of fees, costs, or other security.  See Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c).  The grant or denial of the request is within the sole discretion of the Court.  Filing a request for an attorney with the Court does not extend your time in which to file a civil action.  Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File a Civil Action").

FOR THE COMMISSION:


_Carlton M. Hadden_
Carlton M. Hadden, Director
Office of Federal Operations


_FEB 2 8 2013_
Date

000109

3                                                      0520130011

## CERTIFICATE OF MAILING

For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.  I certify that this decision was mailed to the following recipients on the date below:

Ferial K. Ardalan
POB OD
Pacific Grove, CA  93950


Department of the Army
Director, EEO Compliance and Complaints Review, (EEOCCR)
ATTN: SAMR-EO-CCR (Spurgeon A. Moore)
5825 21st Street, Bldg 214, Room 129
Fort Belvoir, VA 22060-5921


_____ FEB 2 8 2013 _____
Date

Compliance and Control Division

000110

July 25, 2011

Ferial K. Ardalan
(Aggrieved/Complainant)
P.O. Box OD
Pacific Grove, CA 93950
(831) 655-5350

Ms. Ischa W. Donahue  (EEO Manager)
c/o Mr. Fernando Casao (EEO Counselor)
Defense Language Institute
Presidio of Monterey, CA 93944-5066

**Subj.: Filing a Complaint for Continuation of Retaliation by the Denial of Employment**

Dear Ms. Donahue:

I hereby would like to file a new **Complaint for the Continuation of Retaliation** against my
protected activities (filing multiple EEO complaints at DLI) for the violations of my federally
protected rights.

Please note: As you are well informed, my previous Complaint filed in 2009, is currently on
Appeal and pending the decision of the EEOC.

In this Complaint which has been for the **Further Continuation of Retaliation**, the DLI
management has continued with the violations of the federal rights by the denial of employment
to me for various vacant positions, for which I have been highly qualified and yet denied.

The previous Complaint was for the continuation of employment from July 10, 2006 to August
1, 2009 vacancies.  Attached is the list of the jobs denied me from 6/3/2010 to June 15, 2011.
Since per the new regulations of USAJOBS after certain period of time, the job listings are
removed, I will have to search in my record for the jobs applied since August 2009 to June 3,
2010, and will forward the list for your attention.

**The present complaint has been for the Continuation of the denial of employment since
then – August 2009 up to June 15, 2011,** when I was notified by the USAJOBS that my
application was forwarded to the selecting official.  To date, **44 days since June 15, 2011,** I have
not yet been hired while my applications have continued to be rejected by the management.

Per the testimony of Dr. Zhu, during the IRD investigation on my last Complaint, he would
throw my applications to the side and he would not pay any attention to them.  Per the testimony
of Jennifer Amorin, CPO specialist, who was complaining about my multiple EEO Complaints,
the CPO has placed a **'Red tag' stating 'terminated for cause,'** on the cover of my application
package, so that the selecting management who would view it, would be discouraged to hire me.
She also stated such action would also be taken when any other employer was asking about me
and/or my employment at DLI.

000111

I would appreciate it if you would process the Complaint ASAP. Thank you!
Sincerely,

Ferial K. Ardalan
Attachment:  List of job applied and denied from June 30, 2010 to Present
Remaining list will be forwarded in the near future.

18       Do you swear or affirm to tell the truth, the

19   whole truth, and nothing but the truth?

20       MS. HOGAN:  I do.

21       THE INVESTIGATOR:  And would you state your

22   full name for the record.

23       MS. HOGAN:  Charlene Hogan.

24       THE INVESTIGATOR:  And have you had the

25   opportunity to look at the Privacy Act Notice?

                           13
          HARTSELL & OLIVIERI (831) 423-5911
       Ferial K. Ardalan (4-29-10)

1        MS. HOGAN:  Yes.

2

3            CHARLENE HOGAN,

4    being duly sworn by the Investigator to tell the truth,

5    the whole truth and nothing but the truth, testified as

6    follows:

7

8            EXAMINATION BY THE INVESTIGATOR

9        Q   As you have been briefed, I'm investigating an

10   EEO complaint filed by Ms. Ferial Ardalan with regard to

11   her nonselection for 3 different position announcements,

12   so my questions are going to relate to her referral and

13   anything that you have as far as the administrative

14   processing of her application.

89

15      At the time of her complaint back in August of

16   2009, can you tell me what your position title, series,

17   and grade was?

18      A.  I was the faculty personnel system

19   administrator.  I was a YC-301-02.

20      Q.  And during that time frame, where did you work

21   at?

22      A.  The faculty personnel system office at DLI.

23      Q.  Here at the Presidio?

24      A.  Yes.

25      Q.  And who was your supervisor?

1      A.  Could you give me the time frame again.  I'm

2   sorry.

3      Q.  August 2009.

4      A.  August 2009.  Mr. Douglas McCloud.  He came in

5   August of 2009, so --

6      Q.  And how long did you work in your position?

7      A.  From February '07 till I retired in July of

8   '09.

9      MR. HALPERIN:  July '10?  July of '09 --

10      THE WITNESS:  I'm sorry, then.  I was thinking

11   of another year.  That was August of '09?

000114

12      THE INVESTIGATOR.  Correct  We haven't got to

13  August 2010 yet.

14      THE WITNESS:  Because in August of '09 I was

15  retired

16      BY THE INVESTIGATOR.

17      Q.  All right.  Prior to that, did you work in

18  your position until you retired in July of 2009?

19      A.  I retired July 31st, 2009.

20      Q.  During your last employment in July 2009, who

21  was your supervisor then?

22      A.  Doug McCloud.

23      Q.  And can you tell me what you did in your

24  position, briefly.

25      A.  Our office is responsible for the faculty

15

HARTSELL & OLIVIERI (831) 423-5911
Ferial K. Ardalan (4-29-10)

1  processes once they have come on board  We do what we

2  call -- They compete for tenure, for permanent

3  positions.  They're hired in the GS -- what we would

4  call term position.  They're tenure track employees.

5  They have to compete for higher ranks, and our office

6  does that  We do internal announcements for new work

7  assignments. and we call those "Call for Candidates,"

8  where people compete for different work assignments.

C:\Documents%20and%20Settings\warrenhm\My%20Documents\ARDALAN\Transcript txt(6/10/2010 9 52 33 AM]

9      Q.  Did you ever know the complainant,

10     Ms. Ardalan?

11     A.  Yes.

12     Q.  How did you know her?

13     A.  I first met Ms. Ardalan in 1995.  I was a

14 management-employee relations specialist in the civilian

15 personnel office, and I was the technical adviser on her

16 removal, and assisted the labor law counselor with the

17 MSPB hearing.

18     Q.  Can you tell me a little bit about her

19 removal, why she was removed.

20     A.  She was removed for being AWOL.  She had had

21 some -- a reprimand and some other problems.  They came

22 up with a settlement agreement and with moving her to

23 another area out of the school, and she never showed up

24 for work.  And after being 2 weeks of AWOL, they started

25 removal procedures.

16
HARTSELL & OLIVIERI (831) 423-5911
Ferial K. Ardalan (4-29-10)

1      Q.  And when was that again?

2      A.  She was removed October 20th, 1995.

3      Q.  Now, is that considered, under personnel

4 terms, as removed for cause?

5      A.  Yes.  It was an adverse action

000116  92

6      Q.   Prior to the EEO complaint that I'm here today

7   on, were you aware of any previous EEO complaints that

8   she had filed?

9      A.   Yes. I've testified in previous complaints.

10     Q.   You state you testified as a responsible

11   management official, or a HR specialist?

12     A.   It -- Our office is strange, because we're

13   really not HR specialists but we do similar type work,

14   once the faculty have come on board. We used to

15   actually do the hiring in our office until 2007, when it

16   moved down to the CPAC, okay. So I've seen her

17   applications in a lot of different areas -- when we were

18   doing the hiring, we had her application -- and then I

19   would testify as the faculty personnel system

20   representative or administrator as to why she wasn't

21   being hired.

22     Q.   And then you said you were a witness. Can you

23   recall the last time you were a witness in her case?

24     A.   It was the last one we had here. It could

25   have been a year ago, I'm not sure.

17

HARTSELL & OLIVIERI (831) 423-5911
Ferial K. Ardalan (4-29-10)

1      Q.   Do you happen to know the outcome of that

2   complaint?

file:///C:/Documents%20and%20Settings/warrenbm/My%20Documents/ARDALANFTranscript.txt[6/10/2010 9:52:33 AM]

000117

93

3     A   No.

4     Q   Now, do you know the responsible management

5   official, Dr. Zhu?

6     A.   Yes.

7     Q.   And how do you know him?

8     A.   Because he's the dean of a school, and I'd

9   worked in the personnel office and worked with him.

10   Actually, I was doing the training for -- the

11   supervisors training when he first started, after about

12   2 weeks of him being here, and he was in the class.

13     Q.   You touched on her being terminated from her

14   employment for cause, and you indicated you were the

15   management and employee relations specialist on that

16   case?

17     A   Yes.

18     Q.   Okay.  Based on her being removed, can she be

19   rehired at this installation, or within DLI?  Let me

20   clarify that.  Within DLI.

21     A.   The policy has always been that we do not

22   rehire people who have been removed for cause.  We

23   formalized that.  It was always just a stated policy for

24   years.  It was in the CFR, which gave us permission to

25   do it, and when we rewrote our implementing regulation

000113

94

HARTSELL & OLIVIERI (831) 423-5911
Ferial K. Ardalan (4-29-10)

1    of the faculty personnel system, 690-1, in August of

2    '08, we included it in that

3        Q.  Now, the referrals that I'm talking about for

4    her, the opening date, according to what's in the case

5    file, was 30 January 2009; closing date, January 29th,

6    2010. First cutoff date was 2009. So the policy that

7    you're referring to, the DLI regulation 690-1, when was

8    that implemented?

9        A.  August 18th, 2008.

10       Q.  So it was implemented in writing --

11       A.  Yes.

12       Q.  -- prior to this announcement.  In a sense --

13   Can you basically summarize what the purpose of this

14   regulation is.

15       A.  It's to outline all of the rules on how we do

16   merit pay for faculty, how we do rank advancement.  It

17   refers to the tenure process, you know, who is

18   responsible for what.  Those are the 3 major areas, you

19   know, listing office responsibilities as well.

20       Q.  And in looking at the copy that was provided

21   for the record, staffing -- It states that if someone

22   has been -- a complainant was removed under adverse

23   action procedures, therefore they cannot be rehired; is

24   that correct?

25       A.  Yes.

000119



19

HARTSELL & OLIVIERI (831) 423-5911
Feral K. Ardalan (4-29-10)

1    Q.  According to the record and what I've looked

2    at, her name is on the certificate of referral to the

3    selecting official, Dr. Zhu.  Do you know why her name

4    would be on the selecting -- or on the resumes, or --

5        A.  Our office doesn't do the referrals anymore.

6    It's done through the CPAC.  What I have understood, and

7    I'm not a CPAC person, is that when people

8    self-nominate, when they do the basic qualifications --

9    if they meet the basic qualifications, they go on the

10   referral list.  I don't know that there's a process in

11   place to flag those people who have been removed for

12   cause so that they aren't on the list.  But even when

13   our office was doing it, her name would be generated on

14   the list, but it was always understood that even if

15   somebody got on the list they weren't rehired, that they

16   just pass them over.

17   Q.  Do you know if it's documented anywhere on the

18   list that she's not eligible for rehiring?

19   A.  When we were doing the list in our office on

20   the DA-2600s, it was not documented.  When we went to

21   Resumex, in the Notepad, the selecting official may or

22   may not have made a note that this person was removed

23   and therefore not considered.  It wasn't something that

000120

96

24   we made them do; however, they may have chosen to do

25   that.

HARTSELL & OLIVIERI (831) 423-5911
Ferial K. Ardalan (4-29-10)                                    20

1    Q.   With the selecting official acknowledging that

2    a person has been terminated for cause, would a

3    selecting official be required to follow the whole

4    selection process, for example, reviewing that

5    applicant's resume, interviewing them, if they have an

6    interview process, if they'd known they've been

7    terminated?

8    A.   No.

9    Q.   And why is that?

10   A.   There's no requirement to interview anybody,

11   or, if you choose to interview, that you have to

12   interview everybody.  So a person could pick and choose

13   who they wanted to interview.  I imagine, because I've

14   seen it in the past, that there's a lot of lists that

15   come out with the same people's name on it continually,

16   because they self-nominate year after year.

17        The selecting official has reviewed their

18   resume so many times that they really know what this

19   person is, and they may look and see if they've gotten

20   new education or new work experience, but they wouldn't

000121

97

21  have to look at it in depth to know that they really

22  don't want to consider that person, you know.

23      Q.  Now, if the supervisor -- if it was a new

24  supervisor that did not know her history, for example,

25  that she'd been terminated, what would happen if she was

HARTSELL & OLIVIERI (831) 423-5911
Ferial K. Ardalan (4-29-10)                    21

1  selected by that supervisor?

2      A.  Well, one of the first things -- You know,

3  it's never happened, okay.  When people have called and

4  asked about people, we tell them, you know, they've been

5  let go for cause.  When we had the files in our office,

6  before the CPAC took them over, we put the removal

7  letter and the proposal letter in there, so that when

8  the supervisor was looking at that file he had that

9  information available, that she had been removed for

10  cause.  So in those instances, they would never have

11  selected them.

12      I then went -- because I didn't want to chance

13  any problems -- and I took labels in big red print that

14  would fit on the label, put "Not Eligible for Rehire,"

15  and labeled the folder, to try to alleviate any problem

16  like that.

17      Q.  And that was then?

000122



18      A    That was then, yeah   And AP sent those files

19    down to the CPAC, so -- With the labels still on them.

20      Q   Do you know if that process -- if they still

21    follow that process?

22      A   I honestly don't know

23      Q   All right   Do you have any reason to believe

24    that Dr  Zhu considered her prior EEO activity as a

25    reason not to consider her for the position?

HARTSELL & OLIVIERI (831) 423-5911
Ferial K. Ardalan (4-29-10)                  22

1      A   I wouldn't believe he would, only because the

2    first time he passed her over, he hadn't been here very

3    long, and probably wouldn't have even been aware that

4    she had prior EEO activity. I don't see how it would

5    have even come into play later, because she'd been

6    removed for cause and that was reason enough.

7      Q   Okay. Just one more question on this

8    regulation: Employees who were adversely terminated

9    will be disqualified from any future appointment for

10   positions. Is that forever?

11     A   Yes.

12     Q   So there's no timeline on that?

13     A   There's no timeline, no

14        THE INVESTIGATOR: Okay. That completes my

000123



15    questions, Mr. Halperin?

16        MR. HALPERIN:  I have no questions.

17        THE INVESTIGATOR:  We're officially off the

18    record.

19        (Off record.)

20        (Ms. Jennifer Amorin enters the room.)

21        THE INVESTIGATOR:  Let's go officially on the

22    record. Do you swear or affirm to tell the truth, the

23    whole truth, and nothing but the truth?

24        MS. AMORIN:  Yes, I do.

25

HARTSELL & OLIVIERI (831) 423-5911
Ferial K. Ardalan (4-29-10)

23

1

2        JENNIFER AMORIN,

3    being duly sworn by the Investigator to tell the truth,

4    the whole truth and nothing but the truth, testified as

5    follows:

6

7        EXAMINATION BY THE INVESTIGATOR

8    Q.  Please state your name for the record.

9    A.  Jennifer Amorin.

10    Q.  And your last name?

11    A.  A-m-o-r-i-n.

000124



12     Q.  The complaint I'm investigating is an EEO

13  complaint filed by Ferial Ardalan with regard to her

14  nonselection based on reprisal.  She claims she was not

15  selected for 3 different positions -- actually, I

16  understand there's more positions, but it's actually 3

17  announcements, okay.  And rather than repeating them for

18  the record, I am just going to show you what those

19  positions are (indicating).  I'm referring to the

20  acceptance letter.

21     A.  Okay.

22     Q.  All right.  The time frame we're going back to

23  is when she filed her complaint, which is August of

24  2009.  Could you tell me what your position title,

25  series, and grade was at that time.

                              24
          HARTSELL & OLIVIERI (831) 423-5911
      Ferial K. Ardalan (4-29-10)

1     A.  Human resources specialist, YB-201.

2        MR. MESSENGER:  YA?

3        THE WITNESS:  YA-201-00.

4        BY THE INVESTIGATOR:

5     Q.  And where did you work at that time?

6     A.  The Civilian Personnel Advisory Center.

7     Q.  And is that better known as CPAC?

8     A.  That's correct.

000125



9   Q.   And where is that at?

10   A.   Here at the Presidio of Monterey.

11   Q.   And who was your supervisor?

12   A.   Martina Alvarado.

13   Q.   And how long have you worked for her?

14   A.   4 -- 4 or 5 years.

15   Q.   And briefly, tell me what you do in your job.

16   A.   Currently I'm a labor and management-employee

17   relations specialist.

18   Q.   And were you doing the same thing in the

19   August 2009 timeframe?

20   A.   Yes, ma'am.

21   Q.   Do you know the complainant, Ms. Ardalan?

22   A.   I know her from my -- from -- I've worked on

23   this installation for 18 years, so I know her from when

24   she was actually working here.

25   Q.   Tell me what your working relationship was

HARTSELL & OLIVIERI (831) 423-5911                25
Ferial K. Ardalan (4-29-10)

1   with her.

2   A.   I didn't have a working relationship with her.

3   I worked in the CPAC then all the time, so I just knew

4   of her, like I do many employees on the installation

5   Q.   Were you aware that she had previous EEO



6     activity before doing this case?

7        A.  Yes, ma'am.

8        Q.  And how did you know that?

9        A.  Because there's been countless claims.  So

10   we've dealt with information gathering, gathering

11   documents from the MER -- the management-employee

12   relations perspective.

13       Q.  Were you ever a witness in any of her cases?

14       A.  No, ma'am.

15       Q.  And do you know the responsible management

16   official, Dr. Zhu?

17       A.  Yes, ma'am.

18       Q.  And how do you know him?

19       A.  He's the dean of the now Persian-Farsi school,

20   and I work with him in his organization.  So I deal with

21   his organization's management-employee relations issues

22       Q.  You indicated you knew the complainant,

23   Ms. Ardalan.  Were you aware she had been terminated

24   from her employment?

25       A.  Yes, ma'am.

26

HARTSELL & OLIVIERI (831) 423-5911
Ferial K. Ardalan (4-29-10)

1        Q.  And how did you know that?

2        A.  Again, just from the document reviews and

le://C:\Documents%20and%20Settings\warenhm\My%20Documents\ARDALANFTranscript.txt(6-10-2010 9:52:33 AM)

3    document gathering for other EEO complaints. I don't

4    believe I was actually working here. I was working for

5    another federal agency for a period of time, so I don't

6    think I was actually working here when she was

7    terminated, nor do I recall when that date was, but I do

8    know that she was terminated.

9        Q.   And do you know why she was terminated?

10       A.   I don't know the specifics of why she was

11   terminated, I just know that she was adversely -- she

12   was terminated for cause.

13       Q.   And what does that mean?

14       A.   It means that based on misconduct and/or

15   performance deficiencies, the employee was separated

16   under adverse conditions, not just for a nonrenewal of

17   appointment or something like that.

18       Q.   Okay. Based on her being terminated, is there

19   any type of policy or procedure that she can be rehired?

20       A.   No. Actually, there's a policy that indicates

21   that, based on a termination, she cannot be or she is

22   not considered eligible for rehire.

23       Q.   Can you tell me a little bit about that

24   policy.

25       A.   Sure. It's the DLI 690-1, which is the

HARTSELL & OLIVIERI (831) 423-5911
Ferial K. Ardalan (4-29-10)

1    Faculty Personnel Handbook, and that is the source

2    document that we use for all matters of faculty

3    personnel, staffing and rank advancements, merit pay,

4    everything that has to do with how we handle our faculty

5    personnel. And in the document, the DLI 690-1, it

6    specifically states that if an individual has been

7    terminated for cause, that they will not be considered

8    eligible for rehire.

9        Q.  Now, in her particular -- In this particular

10   case that I'm investigating, her name is on the referral

11   list for the positions that are of issue.

12       A.  Correct.

13       Q.  Can you explain why her name would be placed

14   on the referral list.

15       A.  Absolutely.  The process that we use now in

16   the personnel office for staffing is not like the good

17   old days, as I like to call them, it's -- There's an

18   automated system and automated application process. An

19   individual nominates themself for a position through an

20   automated system.  When a person is determined to be on

21   the referral list, we do not look at eligibility, we

22   look at minimum quals.  So the individual just has to

23   meet the minimum qualifications for the position that is

24   being announced in order to get their name on the

25   referral list, okay.

28

HARTSELL & OLIVIERI (831) 423-5911
Ferial K. Ardalan (4-29-10)

1    So in the initial cursory review, the staffers
2    just look at whether or not that individual meets the
3    minimum qualification requirements.  Which obviously,
4    considering that she's worked here before, she meets the
5    minimum qualifications for the position.
6        At the selection phase -- So the referral list
7    is generated, it goes to the organization or
8    organizations, and the supervisor -- the dean, director,
9    whoever -- looks at those individuals, and that is when
10   they select an individual, when they say, okay, we want
11   these people.  Then when that listing goes back to the
12   staffing specialist, that is when they are required to
13   determine eligibility.
14       So there's qualifications for the position,
15   but then there's eligibility.  And in this case, it's at
16   that point -- If, for instance, they were to have
17   selected her, it would be at that phase that the
18   staffing specialist would have to go back to that
19   selecting official and say, based on the DLI 690-1,
20   which is our local policy and regulation, that that
21   individual would not be eligible to be selected, and
22   then they would have to make an alternate selection.
23   Q.   Okay.  With that, then, is the selecting

*106*

000130

24   official required to go through the selection process,

25   for example, actually reviewing their resume, ranking

HARTSELL & OLIVIERI (831) 423-5911          29
Ferial K. Ardalan (4-29-10)

1   them, rating them, interviewing them, as any other

2   candidate?

3       A.  No, not if they're ineligible, if they're not

4   eligible to be considered.

5       Q.  But how does that selecting official know

6   that?

7       A.  In this case, I would say that -- I mean, if

8   we're talking specifics with this particular case, I

9   couldn't speak in general terms, but specifically,

10   because there is history with this complainant filing

11   multiple complaints, most of the selecting officials

12   that hire, not only in the Persian-Farsi departments on

13   this installation but also curriculum development or

14   faculty development, they're aware from participation in

15   previous complaints that that particular individual is

16   ineligible to be rehired.  So even if they wanted to

17   select her, it would be against our DLI regulation to

18   rehire her, as with anybody that has been terminated.

19       Q.  So with your expertise, then, once -- in

       Dr. Zhu's case, her name is on the referral.  He has

*107*

000131

21   testified that he was aware that she had been

22   terminated --

23      A   Correct

24      Q   -- and he did not look at her application any

25   further   So under HR guidelines, is that permissible?

30
HARTSELL & OLIVIERI (831) 423-5911
Ferial K. Ardalan (4-29-10)

1      A   Yes.  Absolutely.

2      Q   He would not have been required to --

3      A   He would not have been required to refer her

4   name to the panel because he already -- I mean, it would

5   be a moot point to do something like that, because he

6   already has that knowledge that she's not eligible, and

7   even if they did select her, he would not be allowed to

8   rehire her because it would violate our local

9   regulation.

10      Q   Is there any other type of system in the works

11   that can somehow identify her actually on the

12   certificate, that she is ineligible?  Because I think,

13   what if there is another supervisor that may not be

14   aware of her history of having been terminated?

15      A   We have an informal process, and we're in the

16   process of making that a more formal process.  Our

17   informal process is that, since the labor and


00013

18  management-employee relations folks work in the same

19  building as the staffing specialists, we have a system

20  where, if -- once a selection is made and the staffing

21  specialists are reviewing those resumes, if it's

22  indicated on those resumes that that person has

23  previously worked for DLI, then they verify with our

24  department whether or not the individual is eligible for

25  rehire.  And then we go in and either look in our

31

HARTSELL & OLIVIERI (831) 423-5911
Ferial K. Ardalan (4-29-10)

1  records or look at the SF-50s and make that

2  determination, and then provide that information back to

3  the staffing specialists to insure that we are not

4  violating our regulation and rehiring individuals that

5  have been terminated.

6      We are in the process of putting together a

7  more formal list of all the individuals that we

8  terminate because that is something that we

9  unfortunately have to do.  So we put together -- We're

10  putting together a list that will be available to all of

11  the CPAC staffers, that they will be able to, instead

12  of -- I guess it's just an easier means, instead of

13  having to verify with us, they'll have a list that they

14  can access through an automated means, and once the

15   selections are made, they'll be able to go in  - It's

16   actually going to be directed by our director that they

17   have -- that's one of the steps that they have to take.

18   Is go in, access this list, make sure that the

19   individual that was selected is not on that list, as a

20   more official way of putting a system in place for that.

21      Q.  But in this case, back to August 2009, there

22   was an informal system in place; correct?

23      A.  Yes.  Yes.  As with not just this -- not just

24   with the Persian-Farsi, but with any referral list that

25   is out on this installation at all.


HARTSELL & OLIVIERI (831) 423-5011                 32
Ferial K. Ardalan (4-29-10)

1      Q.  That was my next question, is are you aware of

2   anyone other than the complainant that may have been

3   terminated but their name has been placed on a referral

4   list?

5      A.  It's possible.  It's possible that their name

6   will make it on a referral list if they reapply after

7   they've been terminated.  We cannot -- it would be -- It

8   would be against merit principles for us to tell

9   somebody they cannot apply.  Anybody is free to apply to

10   a job.  And that does mean that in some cases they may

11   make it on a referral list.  It's at the selection phase

12    that we have to be cognizant of what we're doing in

13    making sure that we're following the process and

14    determining eligibility, and eligibility is where this

15    regulation comes into play and we draw that

16    relationship.

17         Q.  Do you or did you notify the complainant that

18    she was not eligible for employment?

19         A.  Not me personally.  But if their name is on a

20    referral list, and once the selections are made, there's

21    an automated response through the ANSWER system that

22    will notify the individual that they're not eligible or

23    that they didn't -- weren't -- you know, whatever the

24    verbiage is, they will notify them what the status is of

25    their application.


33

HARTSELL & OLIVIERI (831) 423-5911
Ferial K. Ardalan (4-29-10)

1         Q.  Do you have any reason to believe that Dr. Zhu

2    considered the complainant's prior EEO activity for not

3    considering her or referring her for the position?

4         A.  No.

5         Q.  And why do you say that?

6         A   Because he -- I mean, he is well aware -- The

7    Persian-Farsi department is a very active school, it's

8    an up and coming school, so Dr. Zhu is very well versed

///C:/Documents%20and%20Settings/warrenhm/My%20Documents ARDALAN/Transcript.txt(6/10/2010 6:52:33 AM)



000135

9    in these matters, because he has terminated other

10   individuals within his school. So he is very familiar

11   with the 690-1. So he would base his decision strictly

12   upon the facts, that regardless of how he felt about

13   someone, there's a regulation that would preclude him

14   from being able to consider her even if she was the --

15   the most stellar resume in the bunch, he wouldn't have

16   the opportunity to select her because once it came back

17   to our office, we would bounce that selection back.

18       THE INVESTIGATOR: Okay. That completes my

19   questions. Mr. Halperin?

20       MR. HALPERIN: I have no questions.

21       THE INVESTIGATOR: Okay. We're officially off

22   the record. Thank you.

23       (Off record.)

24       THE INVESTIGATOR: At this time the

25   fact-finding conference is completed. I will offer

34

HARTSELL & OLIVIERI (831) 423-5911
Ferial K. Ardalan (4-29-10)

1    Mr. Halperin an opportunity to make a closing statement.

2        MR. HALPERIN: The Agency waives a closing

3    statement.

4        THE INVESTIGATOR: I just want to clarify a

5    couple of things on the witnesses. Dr. Zhu's testimony

000136
112

6    indicated that he was the only selecting official, not

7    Mr. Vezilich, therefore I will not be interviewing him

8    by declaration as I had stated in the opening

9         Additionally, no panel members will be

10   interviewed, based again on Dr. Zhu's testimony that

11   Ms. Ardalan's resume never made it to the panel members

12   for referral and consideration.

13        And because of the testimony of Ms. Amorin and

14   Ms. Hogan, I have determined I do not need to speak to

15   Ms. Clayton or Ms. Ellin, who were staffing specialists:

16   that both Ms. Hogan and Ms. Amorin explained the system

17   on the referral.

18        With that, is there anything else from you,

19   Mr. Halperin?

20        MR. HALPERIN:  No, ma'am.

21        THE INVESTIGATOR.  The conference is now

22   adjourned.  The time is 3:30 p.m.

23        (The proceedings were concluded at 3:30 P.M.)

24

25

35

HARTSELL & OLIVIERI (831) 423-5911
Ferial K. Ardalan (4-29-10)

1    STATE OF CALIFORNIA  )
                          )  ss
2    COUNTY OF SANTA CRUZ )

000137

113

6   indicated that he was the only selecting official, not

7   Mr. Vezilich, therefore I will not be interviewing him

8   by declaration as I had stated in the opening.

9        Additionally, no panel members will be

10   interviewed, based again on Dr. Zhu's testimony that

11   Ms. Ardalan's resume never made it to the panel members

12   for referral and consideration.

13        And because of the testimony of Ms. Amorin and

14   Ms. Hogan, I have determined I do not need to speak to

15   Ms. Clayton or Ms. Ellir, who were staffing specialists;

16   that both Ms. Hogan and Ms. Amorin explained the system

17   on the referral.

18        With that, is there anything else from you,

19   Mr. Halperin?

20        MR. HALPERIN: No, ma'am.

21        THE INVESTIGATOR: The conference is now

22   adjourned. The time is 3:30 p.m.

23        (The proceedings were concluded at 3:30 P.M.)

24

25

HARTSELL & OLIVIERI (831) 423-5911
35
Ferial K. Ardalan (4-29-10)

1   STATE OF CALIFORNIA )
                         ) ss
2   COUNTY OF SANTA CRUZ )

000138

114

C:\Documents%20and%20Settings\warrenfin\My%20Documents\ARDALAN\Transcript-DiJo 10 2010 9 52 33 AM)

HARTSELL & OLIVIERI (831) 423-5911

000130

3

4                    CERTIFICATE

5

6           I, KATHLYN E. WIRICK, a Certified Shorthand

7    Reporter, License No. 2875, do hereby certify:

8           That I am the reporter who reported the above

9    and foregoing proceedings; that said proceedings were

10   taken down by me in shorthand at the time and place

11   therein named and were thereafter transcribed; and the

12   same is a true, correct and complete transcript of the

13   said proceedings to the best of my ability.

14           I further certify that I am not of counsel or

15   attorney for any of the parties hereto, or in any way

16   interested in the events of this cause, and that I am

17   not related to any party hereto.

18           IN WITNESS WHEREOF, I have hereunto subscribed

19   my name on this _____ day of

20   _____, 2010.

21

22           _____
              KATHLYN E. WIRICK
23           Certified Shorthand Reporter, CP

24

25

000140

116

ocuments%20and%20Settings%warrenhin My%20Documents%A...

Dababneh, Reem A Dr CIV USA TRADOC

| | |
|---|---|
| From: | Donahue, Ischa W Ms CIV USA IMCOM |
| Sent: | Tuesday, November 03, 2009 4:09 PM |
| To: | Donovan, Richard P CIV USA TRADOC |
| Cc: | Dababneh, Reem A Dr CIV USA TRADOC |
| Subject: | RE: Ms. Ferial Ardalan (UNCLASSIFIED) |
| Signed By: | ischa.donahue@us.army.mil |

Sensitivity:          Confidential

Classification. UNCLASSIFIED
Caveats: FOUO

Rick,

Please provide this information to the counselor so she can make it a part
of her report - thanks - ischa

Ischa Waltraud Donahue
Equal Employment Manager
Presidio of Monterey (POM), CA
831-242-6141 DSN 768
ischa.donahue@us.army.mil
BB - 831-402-7768
http://www.monterey.army.mil/eeo


Tell us how we're doing:
http://ice.disa.mil/index.cfm?fa=card&service_provider_id=88724&site_id=552&
service_category_id=33

OFFICIAL USE ONLY - This email and any attachments may contain
information that is protected from disclosure by Federal law (the Privacy
Act of 1974) and should be viewed only by those with an official "need to
know." If you are not the intended recipient, be aware that any disclosure,
copying, distribution or use of the content of this information is
prohibited. If you have received this communication in error, please notify
me immediately by e-mail, delete the original message, and destroy any hard
copies you may have created. Any misuse or unauthorized disclosure may
result in both civil and criminal penalties.

-----Original Message-----
From: Donovan, Richard P CIV USA TRADOC
Sent: Tuesday, November 03, 2009 2:38 PM
To: Donahue, Ischa W Ms CIV USA IMCOM
Subject: RE: Ms. Ferial Ardalan (UNCLASSIFIED)
Importance: High
Sensitivity: Confidential

Classification: UNCLASSIFIED
Caveats: FOUO

Hi Ischa, Ms. Hogan works with us on a part time basis. She does not yet
have email but I can pass info on to her if needed.

any case, I'm curious why we are entertaining any requests on her behalf.

According to 5 C.F.R. 302.203 and DLIFLC Regulation 690-1, as a former
employee who was adversely terminated, Ms. Ardalan is disqualified from any
future employment.

74                                          000141

Dababneh, Reem A Dr CIV USA TRADOC



From:             Alvarado, Martina L CIV USA
Sent:             Friday, October 30, 2009 8:48 AM
To:               Donahue, Ischa W Ms CIV USA IMCOM
Cc:               Dababneh, Reem A Dr CIV USA TRADOC, Halpern, Michael L CIV USA IMCOM; Amorin,
                  Jennifer L CIV USA; Donovan, Richard P CIV USA TRADOC
Subject:          ARDALAN (UNCLASSIFIED)
Signed By:        ALVARADO.MARTINA.L.1178793744

Attachments:      Document.pdf

Document.pd
f

Classification: UNCLASSIFIED
Caveats: FOUO

Good morning Ischa.

Ms. Ardalan's case has been ongoing for the last 10 years, and from what I
understand some of the positions that she applied to have already been
addressed in prior EEO complaints. Ms. Ardalan's extensive list does not
show which vacancy claims where previously addressed and perhaps already
resolved. Based on SJA's response to this request, only applications to
vacancies for the last 45 days should be addressed. In addition,
coordination for pertinent documents specific to her current claims,
although we do not know what that is, should include coordination with the
EEOs. We understand, that Rick Donovan is currently handling faculty related
issues, and should be contacted. Charlie Hogan provided a listing of all
vacancies from Ms. Ardalan's last complaint to your office. You may want to
coordinate with Mr. Donovan the vacancies that Ms. Ardalan is claiming and
that may not have already been addressed in a prior EEO complaint.

R,
Martina



73

000142

Job

Blank

000143

BEFORE THE
EQUAL EMPLOYEMENT OPPORTUNITY COMMISION
OFFICE OF FEDERAL OPERATIONS

|  |  |  |
|---|---|---|
| Appeal of | ) | Docket No. 01A64088 0120110347 |
| | ) | |
| Ferial Karen Ardalan, | ) | Agency #1: ARPOM09OCT05023 |
| | ) | Complaint of Ferial K. Ardalan |
| Complainant-Appellant | ) | John M. McHugh, Secretary of the Army |
| | ) | |
| | ) | Department of the Army's Final Decision |

## COMPLAINANT-APPELLANT'S BRIEF IN SUPPORT OF APPEAL

Complainant-Appellant, Ferial Ardalan, hereinafter ("Ardalan") submits the Brief in support of her appeal on file in the above-noted matter. Ardalan filed the notice of Appeal with the EEOC on or about October 13, 2010. This case is now on appeal before the EEOC.

## PROCEDURAL STATUS

In a decision dated September 15, 2010, Spurgeon A Moore, Army Director of EEOCCRA stated he had found that the Complainant, Ardalan had failed to prove that the reasons of the Agency "the Defense Language Institute" ("DLI") for the various challenged actions were a pretext for a discriminatory or retaliatory motive. Accordingly, the Director without a thorough examination of the Case, which has been for the Continuation of Denial of Employment since mid-2006 to September 28, 2009, signed the decision which quite clearly was prepared for his signature by the present labor Counsel of the same Agency, ("DLI") in Monterey, California. The Decision in the conclusion was as follows:

"Pursuant to my authority to decide this matter on behalf of the Secretary of the Army, I find that you were not the victim of discrimination based upon reprisal for engaging in protected Title VII activity based upon the evidence in the case file and for the reasons cited above."

## ARDALAN'S PRELIMINARY STATEMENT

The Investigative report on this Complaint has revealed egregious acts of the violation of the federal laws and Title VII by the DLI civilian management - the DLI EEO Office and the CPO. These federal government employees, in retaliation against Ardalan's protected activities have colluded and have engaged in the defamation of character against Ardalan. Not having any knowledge about Ardalan's pre-termination unlawful activities against her by the former DLI management, they have continued to deny her employment under the pretext that she was terminated for the alleged AWOL. For the above stated reasons, in this Appeal, and in defense

000144

of her tarnished professional reputation, for which reason, Ardalan continually has been denied employment at DLI and other local colleges, she has no option but to include a copy of the April 1998 settlement offer DLI had made to Ardalan. (Attach 11). Such an offer was in exchange for her to leave and not to return to DLI.  In view of the several year denial of Ardalan's rights and the adverse consequences – emotional distress and financial hardship, Ardalan declined the insignificant offer and pursued with the proceedings of the MSPB administrative hearing. Following the several civilian and military personnel testimonies in favor of Ardalan, the DLI Counsel Brennan warned Ardalan for eternal retaliation and persecution. Clearly, if Ardalan indeed was terminated based on the alleged AWOL, DLI would not have made her the settlement offer.  During the ensuing administrative hearings of Ardalan's continual EEO protected activities, including this Complaint/Appeal at hand, the DLI witnesses, have rendered false testimonies and during the investigative proceedings of this Complaint at hand, indeed have engaged is a libelous act of defamation of character.

Furthermore, this Decision wrongfully has been based on the (a) utterly incorrect issues of Ardalan's EEO Formal Complaint, drafted and prepared by the DLI EEO Manager, Ischa Waltraud Donahue (hereinafter, "Ischa."), and (b) a belated, after the fact, and incomplete "No Hire Policy," of the former employees based on the alleged "misconduct."  Should the Army EEOCCRA Director Moore indeed have reviewed the Case File, irrevocably, he would have taken corrective measures on the fraud and the existing conspiracy against Ardalan.  The evidentiary materials in this Case File have supported Ardalan's several year claims that she has been subject to conspiracy by the DLI civilian officials in retaliation against Ardalan's several protected activities.  Indeed, during the administrative investigation of this Case, the existing ongoing conspiracy against Ardalan has unfolded. The transmissions of the "high priority and confidential memoranda" exchanged among the DLI CPO management, Martina Alvarado, Civilian Personnel Supervisor, hereinafter, ("Alvarado,") Rick Donovan, Civilian Instructors Supervisor, hereinafter, ("Rick"), and Ischa quite clearly have manifested the conspiratorial activities to subject Ardalan's EEO Complaint to dismissal and to deny her employment.

Furthermore, the entire testimony of the CPO Specialist, Jennifer Amorin, attached to the Investigative Report, (hereinafter referred to as "Jennifer TR", which is the last attachment to the IRD investigative report transcript), and most particularly, the contents of Pages 21-22, if not her entire testimony, have been indeed inflammatory and direct evidence of the brutal retaliation against Ardalan's protected activities.  Not only that for several years, in retaliation against Ardalan's EEO protected activities the DLI CPO and management have caused the denial of her rights of employment with the federal government, but that the recent administrative testimonies under oath, have revealed further retaliatory and vindictive conduct against Ardalan, as follows:

1) Reregistering Ardalan's name in some sort of a black list produced and distributed to various language schools of the Army;'
2) Placing a "red label" stating "Not Eligible for Rehire" on her employment file; and, most particularly and outrageously,
3) Informing the prospective employers who would call the Agency CPO for employment verification, that Ardalan's "termination was for cause." (Jennifer TR, pp 18-19, 21-22).

Above scenario has manifested the ongoing conspiracy among the DLI management to deny Ardalan, the several years of the denial of employment. Ardalan is a qualified Persian Farsi

000145

language instructor with years of experience in teaching English as a second language to the Persian Farsi university students and Persian Farsi to the English speaking language students at DLI. She has been denied her profession, and has suffered emotionally and financially from unemployment adverse consequences, not to mention the 15 year continual engagement in the protected activities. All of Ardalan's Complaints have failed resulted from the falsified and coached testimonies and the collusion by the EEO Managers with the investigative authorities and the DLI management. The CPO and the DLI management have utterly and brutally ruined Ardalan's career and life and have continued to render falsified and conflicting testimonies during each and every administrative proceeding. However, as a result of Ardalan's consecutive engagement in the following 22 protected EEO activities for the denial of her rights, finally the DLI management's brutal and unlawful conspiracy and the intentional retaliatory acts have unfolded. Most particularly, the retaliation has extended deeply to the extent that Ischa, without having any approval from Ardalan, who had objected to the disclosure of her Social Security number in the Formal Complaint, and without informing her, has obtained Ardalan's Social Security number from the CPO, and has placed it on the top page of her letter of acceptance. The retaliation has exceeded the boundaries of the administrative level and has turned personal and vindictive. All of the above retaliatory activities by a group of conspirators against an innocent Aggrieved have taken place in the Defense Language Institute in Monterey, California.

## EXHIBITS TO BE DISCUSSED IN THIS APPEAL BRIEF

(Attached page (1), and IR p 24, 49) Ardalan's first contact of September 26, 2009, with the EEO Office, for filing an EEO Complaint and the following initial correspondence with the EEO Office

(Attached p 2, one page) List of Ardalan's 5 EEO Complaints prior to filing the Complaint at hand, and the dates of the Continuation of EEO protected activities and status, produced by the EEO Office since 2004 to filing this Complaint at hand.

(Attached pp 3-10) Labor Counsel - Brennan's E-mail instructions to the DLI EEO Office as to how to tamper with Ardalan's Complaints.

(Attached pp 11-21) Ardalan's Revised EEO Formal Complaint submitted at the request of Ischa and following the incorrect revised acceptance of the EEO Complaint.

(Attached p. 22) Colonel Rozdal's letter of commendation

(Attached p. 23-27) Settlement Offer of April 10, 1998 to Ardalan, by Counsel Brennan through MSPB Judge.

(Attached p. 28-32) Ardalan's Formal Complaint was faxed to Ischa. Ischa has not included Ardalan's typed version of the Formal Complaint, although, Ardalan had requested the hand version which due to a temporary hand injury may not appear legible to be replaced by a typed version.

000146

(IR pp 3-6, 105-109) Ardalan's Formal EEO Complaint, which was for the Continuation of the denial of employment since mid 2006 to September 2009, when she had contacted the EEO to file a Complaint.

(IR pp. 105, & 116 & IRD, p.1, and Ardalan's second objection to Ischa's tampered issues and dates in the Letter of Acceptance, and Ischa' conflicting references to vacancy announcement -- Assistant Professorship and Associate Professorship, contrary to Investigator's reference.

(IR pp. 73, 74, 75, 76) Copies of the High Priority and Confidential E-mail correspondence exchanged among Ischa Waltraud Donahue (DLI EEO Manager) addressed to Rick Donavan, Civilian Management and the CPO Management, conspiring to subject Ardalan's Complaint to dismissal and/or Rick Donovan's instructions.

(IR 54-55) List of some of the vacancies Ardalan had applied on USAJOB.GOV.

(IR p. 9) re: (b) Coached testimony, (Attached to IR Report, hereinafter, "Zhu TR,"), p. 10), and re: (c) based the knowledge acquired in the past about Ardalan's Adverse Termination.(IR p. 11).

Charlene Hogan's testimony on adverse employment references, attached to IR Report, hereinafter, ("Hogan TR,"), (Charlene TR p. 21) Unwritten Policy that CPO has followed, (Hogan TR, p 17), Hogan's testimony on how she and CPO placed the SF-50 Form on top of Ardalan's employment application file when submitting it to the hiring official in order for them not to hire Ardalan, (Hogan TR p. 21) Hogan's false report about knowing Ardalan since 1995, when in fact in 1992-3, she began her then new assignment to act as a liaison between the DLI Labor Counsel and CPO. (Hogan TR p. 15) During this time, she called Ardalan students (military personnel) to her office to solicit adverse remarks about Ardalan, in order to set the grounds for a "facially justifiable termination of Ardalan," all efforts made in retaliation against Ardalan's protected activities. Hogan's false testimony claiming she was in Ardalan's  MSPB hearing of 1995, when in fact, MSPB hearing was in March-April 1998, (Hogan TR p 21, Attached 12) and Hogan's false testimony on the hearsay settlement offer Ardalan had received in 1995, to move to another department, and because of Ardalan's failure to show up, she was terminated, when in fact, Hogan was not privy to any such conversations or the alleged 1995 settlement, if indeed ture. (Hogan TR. p. 15).

(Jennifer: TR pp. 26-34). Jennifer Amorin's entire Testimony on the DLI 's " informal and unwritten Local No Hire Policy," , similar to Hogan's testimony, has substantiated that indeed "No Hire Policy" was not in writing when Agency had continually denied Ardalan employment based on such a nonexistent written "No hire Policy." Both Charlene Hogan's Jennifer's testimonies have substantiated the fact that there was not a "Written No Hire Policy," until August 18, 2009, and not during the years 2006, 2007, 2008, and partial 2009, when Ardalan's employment applications were continually denied.

(Jennifer: TR pp. 21, 22) Jennifer's further testimony revealed management's yet another Retaliatory and vindictive plan against Ardalan in that (a) she would put a ("big red label") on top of Ardalan's employment application file when submitting it to the selecting officials, (b) CPO has been in the process of the production of some sort of a List, in which Agency would include Ardalan's name and the other subsequent terminated employees and then would

4

000147

distribute it among various Agency Departments in order to dissuade the officials from hiring Ardalan. Jennifer testified that there was no timeline for the alleged in house non written "No hire Policy." Jennirfer, similar to Charlene, made the most outrageous statement in that CFR had allowed them permission to deny employment although prior to the August 2008, when the alleged "No Hire Policy" was adopted!!!!  *Knight v. United States Postal Serv.*, 79 M.S.P.R. 424 at P10, 1998 MSPB LEXIS 1025 at P 8, 9 (1998).

## SYNOPSIS OF PRE-TERMINATION REATALITIES FOR PROTECTED ACTIVITIES

The following synopsis of Ardalan's employment background has been produced merely to familiarize the EEOC officials with the background of this long ordeal Ardalan brought about for Ardalan by the DLI management, who have cause her many years of denial of employment.

Prior to Ardalan's October 20, 1995 termination of Ardalan, she engaged in at least seven EEO Complaints for discrimination and retaliation. The EEO Office utterly declined to complete the first Complaint, during which initial fact finding procedure Ardalan's claim was substantiated.  Details will not be addressed in this Appeal. Since then, in retaliation against Ardalan for her several subsequent protected activities, she became the target of management, headed by Dr. Ray Clifford, who ordered Ardalan's subsequent demotion and non selections and denied her a desk and office and removed her from the academic calendar.  Above took place with participation of the then Major Richard Donovan, now, civilian "Rick," who has instructed Ischa "not to entertain Ardalan's EEO Complaint." Ardalan was ostracized.  Due to Ardalan's exceptional academic capabilities, the Curriculum Development Dean, LTC Rozdal, and Supervisor, Mr. Dale Purtle, who had heard of Ardalan's plight, through a short term transfer assigned her to work in their Department to perform a quality check on the Persian Farsi curriculum for the Special Forces in Fort Bragg. Upon the completion of the task, when Ardalan returned to the Department, once again, she was ostracized and denied equal treatment.

Ardalan's subsequent EEO Complaints for continuation of retaliation failed as the DLI Counsel, Richard J. Brennan took over the EEO Complaint processing affair and controlled the EEO procedures on Ardalan's Complaint.  Since 1993 EEO administrative hearing to Ardalan's termination of October 20, 1995, the aforementioned brutal retaliation against Ardalan continued with the full knowledge and control of the former Major Richard Donovan, now ("Rick,") current Supervisor of Civilian Instructor Affairs, and Benjamin De La Selva, Clifford's appointed ("Dean."). Clifford met with Ardalan six times and instructed her to withdraw her EEO protected activities. Ardalan declined as there was no guarantee Clifford would restore her rights. When Ardalan left Clifford's office, she overheard Clifford's instructions to Charlene Hogan, CPO Specialist, who was also assisting Brennan, to give Brennan the message: "From now on, make sure all of 'her' Complaints fail – make sure!"  Charlene responded affirmative.

In August 1995, Ardalan reported the aforementioned hostile work environment created for her to the Army and DOD inspector General.  After the preliminary investigations, most of her claims were substantiated.  However, having become afflicted with post traumatic stress disorder, at the recommendation of her physician for a worker's compensation six month leave filed with DLI, Ardalan went on a six month leave. The then DOD IG, Ms. Eleanor Hill, in her

5

correspondence had referred to this Ardalan's aforementioned request for medical leave. Ardalan was set up for a facially justifiable termination by the then labor counsel, Brennan.

During the MSPB hearing of March-April 1998, Ben De La Selva's MSPB testimony revealed that Ardalan's Worker's Compensation Application had remained in his desk drawer until two months after Ardalan's termination when he received the O.K. signal from the management and Counsel. Counsel Brennan, who by hearing the several day favorable testimonies for Ardalan was confident she would prevail, during the recess, approached and warned Ardalan that he would guarantee the failure of all of Ardalan's Complaints as the DLI management would use the power of a high government official who would use his influence on the administrative investigative officials and the judges to dismiss all of Ardalan's administrative Complaints.

Later on, during the discovery procedures of Ardalan's Complaint filed in Court, the contents of some documents revealed the DLI Counsel Brennan and Management's orchestrated retaliations against Ardalan for her protected activities and her termination of October 20, 1995. Furthermore, Ardalan learned how concurrent with the plot for her termination, Clifford and De La Selva had engaged in solicitation of secretly produced derogatory statements from one of Ardalan's unaccomplished students against Ardalan, in return for an easy graduation – all unlawful efforts made in order to defame Ardalan with the Army and the DOD Inspector Generals, who were concurrently investigating DLI, its curriculum, and its management.

In 1996, almost one year after Ardalan's two employment applications were denied, she continued to engage in further EEO protected activities, all of which at the order of Brennan were tampered with and therefore dismissed. In 1998, the OCI investigator informed Ardalan of his findings favorable to Ardalan; however, his favorable report was intercepted by DLI, and once again, a report in favor of DLI was issued. In response to Ardalan's' subsequent inquiry, the Investigator responded he had submitted his findings but did not know what "they" had done to it?! Since 1992, to date, Ardalan has engaged in a total of about twenty two unsuccessful EEO Complaints, all of which have been tampered with by the DLI EEO Managers and dismissed.

## PROTECTED EEO ACTIVITES SINCE 2005

In August 2004, i.e., _nine years_ after Ardalan's termination, she applied for four vacant positions at DLI. Concurrently, Dr. Shen Sheng Zhu was hired at DLI for the vacant position of Deanship for the School of Multi-Languages at DLI. Persian Farsi language Department became under Sheng Sheng Zhu's management. Concurrent with Ardalan's' four employment applications filed at the CPO, she also wrote to letters to Clifford and requested an impartial selection procedures and employment. Per Charlene Hogan's previous administrative testimonies, Clifford had walked down the steps to the CPO office of Esther Rodriguez and Charlene, where he had discussed the hiring or not hiring of some applicants! Ardalan was denied re-employment based on the alleged lack of qualification. However, Dr. Sheng Sheng Zhu, the then newly hired Dean, during the first administrative investigative hearing testified he had received adverse employment references from De La Selva, Clifford's appointed former Dean. Since the investigative findings were favorable for Ardalan, suddenly, during the last hours of the EEOC hearing, DLI lawyer came up the surprised claim that DLI had adopted a new "No hire Policy," although the higher Courts have ruled that a "Policy" should be in writing in

6

order to be legitimate.  Based on such an unsubstantiated claim, and in spite of Ardalan's objections supported by several Case Laws, the EEOC Judge ruled for DLI and the EEOC without reviewing the Case file, ruled for DLI!

Since then - 2004, to date, Ardalan has continued to apply for the multiple vacant positions announced by DLI and on the site of the USAJOBS.Gov, however, in spite of the existing vacancies for which DLI has been continuously advertising and recruiting, all of Ardalan's applications have remained unanswered, even to date!  (IRD file pp. 54-55)

Since August 2006, Ardalan has filed a total of six EEO Complaints based on Continuation of Retaliation by the denial of employment. The EEO Office Managers repeatedly have omitted the phrase "Continuation," from her Complaints, in spite of Ardalan's vehement unsuccessful written objections. Since 2004 denial of employment, until filing of this last EEO Complaint,, there were five administrative investigations, two hearings and appeals filed with the EEOC, most of which administrative procedures have overlapped.  The total of the Complaints since 2005 has been 6 Complaints.  (Attached 6)

Since the DLI EEO Managers under the verbal and written directions of the former labor counsel has continued to sabotage Ardalan's Complaint by tampering with the issues, facts and dates, all of her Complaints have been subject to dismissals and have failed.  Meanwhile, per the website of DLI and the USAJOBS.GOV, DLI has been continually posting vacancy announcements for the multiple vacant Persian Farsi positions and has been recruiting applicants even from overseas, while it has continued to deny Ardalan employment for one of the multiple vacant positions in Persian Farsi. (IRD file pp. 54-55)

## SUBECT OF THIS COMPLAINT AT HAND

The subject of this Complaint-Appeal at hand has been CONTINUATION OF DENIAL OF EMPLOYMENT SINCE mid-2006 TO AUGUST 2009.  The lowest ranks Ardalan has applied for have been Assistant Professorship – GS-11, which has required B.A. degree, and Associate Professorship – GS 12, which has required M.S. degree.  Ardalan has a Master's degree in English and Linguistics.

DLI has not been successful in finding Applicants with M.S. degrees, in particular, in the area of language studies, for which reason, it has not hired any applicant for the rank of "Associate Professorship" – GS-12 for the Persian language teaching positions.  Ardalan has the required Master's degree in language studies and yet has been denied since 2004 to present. Meanwhile, DLI has continued to hire applicants for the Persian Farsi vacant positions at the level and rank of "Assistant Professorship," equivalent to GS-11, as most of the selected candidates at the most, have Bachelor's degrees in other fields of studies, and/or contrary to Ardalan, a former DLI language instructor, have lacked the required experience in the teaching methodology and curriculum of DLI.  DLI has continued to deny Ardalan employment, although there have been multiple vacancies, particularly, for Persian Farsi language!

The above blatant violations of Title VII for retaliation against Ardalan have been against her engagements in multiple EEO protected activities.  Not having a legitimate reason for the denial of employment to Ardalan, during the last stages of the Complaint processing of this last

7

Complaint, once again, DLI has come up with yet another surprised belated claim that in August 18, 2008, it had adopted a 'written' "Non Hire Policy," based on which alleged Policy, it has declined to hire Ardalan, who was terminated in October 1995; i.e. fifteen years ago!

Ardalan has filed the claim for the CONTINATION OF RETALIATION BY THE DENIAL OF EMPLOYMENT SINCE mid-2006 to August 2009.  For this reason and in order to bar Ardalan to pursue her Complaint under the <u>doctrine of Continuation of Retaliation</u>, Ischa in violation of the federal laws and in the interest of the DLI Management, has engaged in tampering with the facts, issues, and dates of the Formal Complaint of this Case, in order to set the grounds for a facially justifiable dismissal of the Complaint, as follows:

The contents of the Attachment 2, History of Ardalan's EEO Complaints since 2004, quite clearly have documented Ardalan's continual and consecutive EEO protected activities by filing Complaints and following the administrative complaint processing in <u>mid-2006, 2007, 2008, and 2009, the subject of this Complaint at hand</u>.  The contents of Attachment 2 also have manifested the overlapping of the various EEO protected activities of these subsequent Complaints.  Per the record, all of Ardalan's consecutive employment applications filed on the site of the USAJOBA.Gov have been denied her, and indeed have remained unanswered. Ardalan has filed a <u>Complaint for the Continuation of Retaliation by the denial of employment for multiple and multiple vacancies."</u>  However, in the Acceptance letter, Ischa has only referred to the "year '2007' Complaint for the denial of employment while omitting the claim for the year 2006, prior to 2007 claim, and also excluded the claim of the year 2008 and partial 2009, the subsequent EEO Complaints." All of the unlawful efforts have been made in order to cover up the "Continuation" of the blatant retaliation about Ardalan.  Although Ardalan via three E-mail correspondence and two phone calls has objected to such falsification of the facts and the omission of the "Continuation of Retaliation," and the omission of the Complaints of 2008 and 2009, for the denial of employment" Ischa has continued with her violations.  She then so conveniently has accepted the tampered and incomplete version of the EEO Complaint for the denial of employment in 2007, which clearly, and based on its date of 2007, would appear "facially delinquent and untimely" and under the law would be "legally inadmissible." Aforementioned has been devised to cover up the continuation of retaliation against Ardalan.

In fact, such a technique has been practiced at the DLI EEO Office since 1996-1997, when the former DLI labor counsel, Richard J. Brennan via E-mail correspondence had responded to the CPO Manager, Nora Deice's inquiry as to whether DLI had not denied Ardalan's rights by terminating her?  <u>Brennan had justified Ardalan's termination by informing Nora Deice that Ardalan had engaged in protected activities against several language schools and the management at DLI.</u> Such a justification, quite clearly has manifested the intentional retaliation against Ardalan who had engaged in several EEO protected activities. (Attached p. 3; 10)

<u>Brennan then via E-mail correspondence with the DLI EEO had instructed the staff to draft Ardalan's EEO Complaints in a manner that they would appear "Facially untimely," and/or "Legally inadmissible." (Attachment 3) In response to the EEO staff's concerns, Brennan had then instructed them not to worry as once they had executed his instructions by tampering with Ardalan's EEO Complaints, it would have been the task of the EEO administrative Judge to decide on the Complaints!</u>  In fact, Brennan had <u>interfered in the manner the EEO staff had</u>

000151

drafted Ardalan's Complaint by questioning the Counselors and/or by instructing them to modify their versions of the Complaint.  Copies of the aforementioned E-mail transmissions were produced to Ardalan in the discovery boxes produced to her during the litigation procedures for the non-selection, demotion and termination Complaint.  (Attachment 3)

Since then to present, all of Ardalan's remaining EEO Complaints have been processed in the aforementioned manner and have failed. Ardalan's multiple objections have been ignored. Ardalan has also received some additional information from other DLI staff about management's conspiracy against her under the instruction of Dr. Ray Clifford, former Provost "Self claimed 'Chancellor." Per the information received, Clifford before his forced retirement of January 2005, had promoted a number of the CPO and EEO staff while advising them to make sure they would never let Ardalan be re-hired at DLI!   Charlene Hogan and Jennifer Amorin, Agency witnesses during the IRD investigation were both working under Clifford's management.

Per previous testimonies, Clifford had routinely met with the EEO staff at DLI on a monthly basis in order to review the EEO Complaints and to advise the EEO Manager which Complaint to settle, which Complaint to accept and which Complaint to dismiss.  Of course, with respect to Ardalan's Complaints, similar to the advice of Rick, current Supervisor, DLI Civilian Instructors, to Ischa, Clifford had issued a blanket order – Dismissal of Ardalan's Complaints. During the 2004 administrative investigation and the 2005 deposition proceeding, Clifford testified he would meet on a monthly basis with the EEO staff to review the ongoing Complaints for acceptance or dismissal.

## CONSPIRACY BY ISCHA, EEO MANAGER, MARTINA ALVARADO, CPO SUPERVISOR, RICK DONOVAN, CIVILIAN ACADEMIC AFFAIR SUPERVISOR

As stated above, Ischa, the DLI EEO Manager, instead of the fair, impartial, and honest processing of Ardalan's EEO Complaint indeed has engaged in conspiracy with the perpetrators – Alvarado, and Rick, now civilian, who on or about 1998, had retired from the Army and in or around 2009, has returned to DLI.  Ischa who had looked for Rick through E-mail inquiries from Alvarado, and then via e-mail, had asked for Rick's direction as to what she should do with Ardalan's EEO Complaint? Rick had advised Ischa **not to entertain** Ardalan's EEO Complaints. For the above stated reasons, Ischa, like her predecessor, Elvira Robinson, former EEO Manager, has tampered with the facts and the time frame of Ardalan's EEO Formal Complaint.  The contents of the **confidential** correspondence among the aforementioned perpetrators have revealed Charlene, former liaison between Brennan and CPO, had had returned to DLI to work on a part-time basis.  Charlene had retired on July 31, 2009. (Charlene TR p. 14)  Rick had informed Ischa, who did not know what to do with the Complaint, that Charlene had returned from retirement to DLI in November 2009. (Charlene TR p. 15, and IR p. 74) Ischa was in the process of decision making on Ardalan's EEO Complaint.  During her employment at DLI Charlene was also working as Personnel technical advisor on Ardalan's termination and was also working with the labor counsel during Ardalan's MSPB hearing, as a technical advisor. (Charlene TR p. 15, 16, and IR p 74) She was to direct Ischa as to how to process Ardalan's EEO Complaint.  Per Charlene's testimony she had gone into the "resumex" on the USAJOBS.GOV to examine the vacancy announcements posted online.  Such a statement has responded to Ardalan's suspicions on the sudden belated alterations to her file as her applications status column on the USAJOBS.Gov, had been filled!

000152

Clearly, Ischa, having been new to the politics of DLI, under the direction of Charlene has omitted Ardalan's claims of discrimination for years 2006, and the years 2008 to September 2009. She then has accepted the claim of 2007, in order to make the Complaint at hand, appear "facially untimely" and "legally inadmissible." Such conspiratorial activities would not have been successful unless the retired Charlene Hogan, after one year of retirement, was asked to return to DLI to work on a part-time basis under Rick's management. Ischa was given the good news by Alvarado that Charlene had returned to DLI! Charlene's testimony has revealed she was examining Ardalan's Job applications filed on USAJOBS.Gov. Clearly she has been the one who has made the belated alteration in Ardalan's Application Status Column, which up to Charlene's return had remained blank! Such belated activities have been made merely in order to cover up for the DLI management, who had utterly ignored Ardalan's employment applications. Charlene had then advised Ischa, EEO Manager as to which vacancies to consider and accept in Ardalan's EEO Complaint as the existing multiple vacancies for the various ranks, in particular, Assistant Professorship, since 2004 to present have been multiple and indeed open ended. Since such an aforementioned scenario has manifested management's blatant discriminatory activities, Charlene, has advised Ischa to exclude Ardalan's job applications for the years mid-2006, and 2008, and 2009, in order to conceal DLI's discrimination against Ardalan. Henceforth, under the advice of Charlene, the usual perpetrator since 1992, Ischa in the Acceptance Letter of the Formal Complaint has omitted Ardalan's claims except for the year 2007. Brennan's directions as to how subject Ardalan's claims to dismissal have materialized.

## ASSIGNMENT OF ERRORS

On or about December 20, 2009, Ardalan wrote her <u>second objection</u> to Ischa's <u>second Acceptance letter</u>. This letter was included in the Appeal to the Army EEOCCRA. (Attached 13) The contents of this letter quite clearly have manifested the unfair and biased incorrect EEO processing of Ardalan's EEO Complaint. Director Moore of Army EEOCCRA has signed the Decision drafted for his signature and utterly has ignored this Objection letter, the contents of which are clear violations of the EEOC and federal laws. Ardalan requests the EEOC to carefully review the aforementioned second Objection to the omission of the multiple vacant positions Ardalan had applied for and yet denied. The following is a synopsis of the contents of the letter.

(a) The DLI EEO Manager, Ischa, has omitted from the Formal Complaint, the phrase "Continuation of Retaliation by the Denial of Employment since mid-2006 to August 2009," during which time, DLI had continued to hire multiple candidates while denying Ardalan employment. (IR report pp 54-56, and p 71)

(b) Ischa has then referred, only, to the year 2007 and has omitted the EEO activities of mid-2006, and 2008, in order to interrupt the continuity of the discriminatory events addressed in Ardalan's EEO Formal Complaint of "Continuation of Retaliation by the Denial of Employment since Mid-2006-2009. (Attachment 2)

(c) Ischa has then referred only to the Claim of "2007."

(d) Ischa has made an incorrect report on Ardalan's first day of contact with the DLI EEO to file this Complaint at hand, by writing the incorrect date of October 26, 2009, when indeed

10

000153

Ardalan had contacted the EEO Office on September 26, 2009. (Attached p 1, and IRD report pp 16 - 18 ).

e)     Ardalan's claim was for Continuation of Retaliation by denial of employment since mid-2006 to September 2009. After weeks of delay, Ischa finally allowed Ardalan to file the Formal Complaint. Ardalan objected to Ischa's tampered issues. (IR pp. 77-78)

f) Ischa then based on her earlier conspiracy by Rick and Alvarado tampered with the issues and dates and <u>only</u> accepted the issue of 2007, which be itself would be considered facially an untimely claim. (IR pp. 115-119)

(g) The DLI has then made the surprise claim that in August 18, 2008, DLI allegedly had adopted a "No Hire Policy," for not hiring the former employees, who were adversely terminated.

Based on the aforementioned tampered dates and scenario, in addition to the alleged belated "No Hire Policy of August 18, 2008" DLI has claimed that Ardalan was not retaliated against. However, the case file quite clearly has indicated that the alleged "No Hire Policy" was adopted in August 2008; i.e., <u>two and a half</u> years after Ardalan's claims raised in this Complaint/Appeal which were for the duration of mid 2006-September 2009.

Despite the above facts, Ischa during the processing of Ardalan's claims has omitted the claims for the year mid-2006 to the year 2007 in the Acceptance letter. She has also omitted the claims for the year 2008. Ischa has then referred only to the year 2007. <u>By such incorrect activities,</u> Ischa's mission to cause the dismissal of the Complaint based on the alleged delinquency, during the next phase of the administrative procedures has been accomplished.

Following the aforementioned step one sabotage, Counsel, so conveniently, has come up with the surprise belated claim that DLI had allegedly adopted the August 2008 "No Hire Policy." Such a belated claim has been masterminded to justify the denial of Ardalan's multiple unanswered employment applications on the site of the USAJOBS.GOV. The fact that the alleged "No Hire Policy" has not been included in any of the conditions of employment for the vacancies announced on the USAJOBS.GOV, as required by law, has been clear evidence that the alleged "No Hire Policy" indeed has been a speedy post-discrimination activities.

It has been quite apparent that Counsel and Ischa, have devised a strategic Plan to cover up the continuity of the discrimination, by (1) omission of the portion of the Complaint which has to deal with the years 2006, and 2008 claims, and then by referring to the discrimination claim of the year 2007.

Ischa has then made the incorrect reference to the Title of the "Persian Farsi Language Teaching positions" vacancy announcements, by referring to the lower tanks of (1) "Instructor," (2) "Assistant Instructor," vacancies which have required <u>high school degrees.</u> Such a claim has been quite false as DLI routinely has advertised for the "Persian Farsi teaching" positions and not for the ranks, which will be determined after the hiring procedures have completed. Following Ardalan's multiple objections to the aforementioned, Ischa in the letter of Acceptance, has finally referred to the higher rank of "Assistant Professorship," for which Ardalan has been

000154

fully qualified and yet rejected.   However, on the first page of the IRD Report of the Investigation, there has not been any reference made to the rank of "Assistant Professorship," all unlawful activities made in order for DLI not to be obligated to produce the list of the multiple applicants who have been hired for the ranks of "Assistant Professorship," during any ensuing administrative investigations.   The IRD investigator has also omitted this rank form the record while has referred to the lower ranks of instructor and senior instructor, which has been only for the applicants with high school degrees.   Ardalan had not applied for such lower ranks.

Ardalan's EEO protected activities began in spring 2005, for the denial of employment for four various vacancies at DLI.  Since July 2006, Ardalan's Appeal for her 2004-5 Complaint was pending the EEOC decision.   Since then to August 2009, she filed five additional Complaints, including this Complaint at hand. From 2006, during which time the EEOC ruled on Ardalan's Appeal, to filing this Complaint at hand, the administrative procedures were ongoing while Ardalan continued to apply for additional vacancies, all of which remained unanswered. Agency declined to respond to even one of Ardalan's Applications and the Status column of Ardalan's job applications continued to remain blank.   All of the administrative procedures of Ardalan's six EEO Complaint since 2005 to 2009, have overlapped in that while Ardalan engaged in filing one additional Complaint for the denial of employment, her prior Complaints were being investigated or were being processed through another channel of the administrative procedures.  Ardalan diligently and continually filed Complaints and the DLI EEO diligently and successfully tampered with her Complaints and subjected them to dismissals.

While in 2006 EEOC Judge Players' Decision on Ardalan's abovementioned First Complaint of 2004-2005, was issued, Ardalan continued to file three additional Complaints, all of which were, so to speak, nipped in the bud by the EEO Managers. Based on all of the tampered issues of all of the three following EEO Complaints, the administrative investigation decisions were issued in 2006, 2007, and 2008, respectively, in favor of DLI. (Attached p. 2)

All of the aforementioned EEO Complaints, similar to this Complaint at hand, were tampered with by the EEO Manager, Elvira Robinson, who would mock Ardalan by making the following Statement: "I mess up your Complaints and you run for your rights and try to prove your cases.  You won't' get anywhere."

Ischa's response to Ardalan's objections has been:  "You can go to annnyone you like and tell them whatevvver you like, you won't get annnwhere and nottthing will change."

Ironically, the date of August 18, 2008, Agency's alleged "No hire Policy" was one month after the EEOC Judge's ruling of mid July 2008 on Ardalan's then last two Complaints, of ARPOM07FEB004-75, and ARPOM07AUG03511.  Ardalan had objected in writing to Judge's unfair decision without a hearing on the consolidated two Complaints

With respect to this Complaint at hand, after Ischa has altered the Complaint for a facially justifiable dismissal, DLI labor Counsel has then claimed the alleged adoption of the "No Hire Policy," of August 18, 2008; i.e., after Ardalan's claims of retaliation from mid-2006 to September 2009. Ardalan's request for a copy of this alleged "No Hire Policy," from the IRD investigator was unsuccessful as the investigator referred her to Mr. Michael Halperin, DLI labor counsel.  Finally, Counsel at the request of Ardalan immediately produced the alleged "Policy.

000155

"to her. Ardalan responded to Mr. Halperin by objecting to the validity of the so called "Policy," as follows:

The Policy was not legitimate as indeed, the signature of Commandant was not dated.

The Policy was dated August 2008, which could have raised the question as to if, indeed the Policy was genuine and it had gone into effect. Ardalan wrote her objection to Mr. Halperin, DLI labor counsel. She stated that although the so called Policy has been allegedly under 5 C.F.R. § 302.203(a) as authority for the use of the "no-rehire" policy, it has lacked the statute of limitation, e.g., the extent of the Regulation, i.e., did it apply to a 15-year old termination based on the alleged AWOL? Also, she stated that the authority in the cited regulation was not self-executing; and prior to use of a policy founded upon the cited regulation, the policy must have been published, in accordance with 5 C.F.R. § 302.203, as part of the qualifications for an appointment.

As stated in the earlier pages of this Appeal Brief, during the EEOC Administrative hearing in 2005, on Ardalan's Case of 2006, for the denial of employment and selection for four vacancies, DLI Management had made the ludicrous claim Ardalan was not qualified. Since such a claim was could not be proven, suddenly Mr. Diersing, former DLI Counsel claimed DLI had adopted a "No Hire Policy," based on which alleged unwritten "No Hire Policy," Agency had denied Ardalan re-employment based the alleged "AWOL." However, Diersing did not produce a copy of the so called "Policy," to the Administrative Court or to Ardalan. Indeed, no such a "Policy" existed. However, and in spite the supporting Case laws on such a matter, Judge Player ruled for DLI and Diersing prevailed. In spite of Ardalan's subsequent extensive arguments raised in the Appeal to the EEOC, in which Ardalan's then Counsel had argued and questioned the existence of the so called "Unwritten Policy," the EEOC by overlooking the higher Court's Case laws, ruled for DLI.

With respect to the Appeal at hand, once again, the current DLI labor counsel has claimed that DLI has adopted "No hire Policy," in <u>August 2008</u> – all pre-emptive efforts made in order to once again obtain a favorable ruling by the EEOC. However, per the required regulations sited in the following "Legal Arguments"; indeed, the "Policy" has not been published or included in the Qualification standards in the Vacancy Announcements on the site of the USAJOBS.GOV. The Army Director Moore has ruled for DLI. It has been quite clear that DLI under the pretext, once again, has made the effort to obtain a favorable ruling.

It has been an amazing scenario as no matter how <u>conflicting DLI's proffered reasons</u> in defense against Ardalan's Complaints of discrimination and retaliation has been, the two officials – EEOC Judge, and the Army Director of EEOCCRA have ruled in favor of DLI and have denied Ardalan's her protected rights! The DLI conspirators have been accommodated to continue to violate the federal laws.

Should Director Moore indeed have studied the Case file, he would have learned that Ardalan is a native Persian Farsi speaker, a language major with a Master's degree in English and Linguistics, a former DLI language instructor, and a Course developer. Director would have learned that due to Ardalan's outstanding academic qualifications and performance, at the request of the former Dean of the Curriculum Development, LTC Edward Rozdal, she had performed the quality check on the Persian Farsi curriculum prepared for the Special Forces in Fort Bragg, and had received high commendation from Colonel. (Attached 11) Furthermore,

000156

Director Moore, should have learned that Persian language is just <u>one language</u> with multi-vacancies. There has not been any vacancy announcement under the title of ranks.

Director should know that Ardalan, a former university language instructor, would not have applied for employment in the lower tanks of Assistant Instructor or Instructor, which have only required a high school degree. The EEO Office, in order to subject Ardalan's Complaint to dismissal, has made false references during the Complaint procedures and in the letter of Acceptance/Dismissal. <u>Quite clearly, the higher rank vacancies for which Ardalan has applied, and DLI has continued to hire, indeed, have been omitted from the EEO Acceptance letter.</u>

In fact, on the USAJOBS.GOV applications for the Persian Language teaching job postings or for any other languages, in the Vacancy Announcement it has stated that applicants would be hired at various ranks equivalent to their academic degrees. On the final page of the application it has also asked the applicant, which lowest GS rank he/she would be willing to accept? Ardalan had only applied for the two higher ranks of GS-11, and GS-12, by placing an "X" in box of the Ranks applied. However, since DLI has continued to hire multiple candidates at the GS-11 (Assistant Professorship), when simultaneously has been denying Ardalan employment at this rank, Ischa has omitted the rank of "Assistant Professorship" from the list of Persian Farsi positions in order for Ardalan not to be able to prove her claim under the McDonnell Douglas vs. Green. The violation of the federal laws by the EEO Manager of DLI has been outrageous!

It is inconceivable that there have been so many oversights by a Director Moore. How could he not review the Case file and the history of Ardalan's EEO Complaints which have manifested the blatant continual Complaints filed since 2004 to August 2009, when Ardalan contacted the DLI EEO to file a Complaint? How could he not consider the fact that Ardalan with such outstanding academic qualification and experience has been denied employment while DLI has continued to post the vacancies online, on Craigslist, in the newspapers and even has recruited from oversees?

To make the matter worse, Ischa has also declined to include the name of the Colonel Sue Ann Sandusky, Agency's Commandant as a main named witness. Ardalan had listed Commandant as a key witness in the Formal Complaint as Commandant was instrumental in the continuation of the retaliatory acts against Ardalan. Commandant had ignored Ardalan's written reports on the ongoing violations of the federal laws at DLI under her Command and had declined to take corrective measures. Colonel Sandusky could have easily ordered Ardalan's re-employment and could have ordered an investigation of such an ongoing conspiracy by several federal government employees, who have ganged up against an innocent former Employee. How could a Commandant ignore such a vital matter under her command and allow the denial of the federally protected rights of an innocent former employee. Ischa has omitted the name of Commandant Sandusky from Ardalan's list of witnesses in order to relieve Commandant from any potential liabilities and prosecutions.

The contents of the Decision signed by Spurgeon Moore, Director of EEOCCRA, quite clearly have indicates that he has been utterly unaware of the aforementioned violations of the federal laws and has signed the Decision with utter incorrect information produced for his signature by the DLI Counsel.

000157

## FACTS OF THE CASE

Ardalan, a native Persian Farsi Speaker and a highly educated and experienced Persian Farsi linguist, has a Master's degree in English and Linguistics. She is a former instructor of English as a Second Language Instructor at the Universities and Colleges. She is a former Persian Farsi Language Instructor at the Defense Language Institute, where she worked since October 2, 1989 to October 25, 1995. While working at DLI, she received commendations for her academic contributions, most particularly, received written commendations from Colonel Edward Rozdal, who had selected Ardalan to conduct a quality check on the Persian Farsi textbook produced at DLI for Fort Bragg. Ardalan has the Certificate of the Defense Language Proficiency Test ("DLPT;" which she acquired when employed at DLI. Finally, Ardalan during her employment at DLI was continually commended by the DLPT officers and by the military language students for her exceptional knowledge, language skills of English and Persian, and her ability for a scientific comparison between the languages. These officials repeatedly, in writing and verbally commended Ardalan for enabling the students to independently analyze the target language and to improvise communication and/or to understand the news on Voice of America.

Since 2004, to present, Ardalan has applied to about multiple vacancies in Persian Farsi and all of her employment applications have remained unanswered and/or denied.

Since mid 2006 to September 26, 2009, when Ardalan contacted the DLI EEO Office to file a Complaint for Continuation of Discrimination and Retaliation for her prior EEO protected activities by the denial of multiple vacant teaching positions of Persian Farsi at DLI, DLI has continued to advertise for Persian Farsi vacant positions, has continued to recruit Persian Farsi speaking candidates when concurrently has been denying Ardalan the same opportunity – employment at DLI.

Should the Government officials indeed find out that during such era when the U.S. Government has been in need of such a high demand for the Persian Farsi trained linguists like Ardalan, how the DLI conspirators have denied her employment for several years, and how the DLI EEO has been tampering with the issues of Ardalan's Complaints in order to obtain a favorable ruling for DLI, there will be severe reprimands imposed on these perpetrators. These conspirators have enjoyed all of the benefits of working for the federal government and yet have violated the laws and regulations of the government.

Furthermore, Dr. Zhu's has stated to the EEO Counselor and to the investigators that based on the knowledge of the past, he would not hire Ardalan. (IR. P 11) During the administrative IRD investigation of this Complaint, Dr. Zhu's testimony, quite clearly indicated that his testimony was interrupted as he was produced with a copy of the alleged "No Hire Policy." Any intelligent person who reads Zhu's testimony, would detect how he was confused while trying to recite the newly produced "Regulation for non hire," which he did not even know what it was about? Quite clearly, Zhu was being coached by Counsel, who must have dropped a copy of the so called "Policy" in front of Zhu.

15

When Ardalan had applied for employment for various vacant positions with various assigned vacancy numbers or dates at DLI via the USAJOBS.gov, the column of the Application Status had continually remained blank. Ardalan, believing that the status of her applications would be eventually announced and reported on the column designated for the "Status," she did not become concerned and did not file any EEO complaints. It was until September 2009, when Ardalan learned that DLI indeed had continued to hire other applicants since 2006; however, it had declined to respond to Ardalan's multiple employment applications and/or even to announce the status of the applications in the designated column.

Since mid-2006 to September 2009 Ardalan's EEO Protected activities were in process, activities which indeed, were overlapping and without any interruptions in the Complaint processing for the continual denial of employment. On September 26, 2009, Ardalan, via e-mail contacted the EEO Office to file the Complaint for the Continuation of Retaliation. Several e-mails were exchanged between Ardalan and the EEO Counselor, following which activities, Ischa attempted to conspire with Rick and Alvarado by requesting their advice as to how to deal with Ardalan's Complaint? Concurrently, DLI was recruiting and hiring multiple applicants for the vacant positions of Persian Farsi, and hiring the candidates at the level of Assistant professorship. There were no applicants who would qualify for the rank of Associate Professorship. Although Ardalan was fully qualified, in light of her multiple EEO protected activities, to which Rick had also referred, she was not hire.

Concurrently, Ardalan learned that Ischa had quarantined her Complaint file in her office and would not let anyone review it. Following Ardalan's several written objections to falsification of the above stated facts, Ischa finally made a belated alteration by including the rank of "Assistant Professorship," in the letter of acceptance; however, the IRD Investigator did not include it in the record and still went ahead and omitted this rank when investigating and writing the Report. (IR p. 1) For this reason, and in the in order to conceal the list of the multiple instructors hired at the level of "Assistant Professorship," since mid – 2006 to September 2009, the correction was not made. The IRD investigator continued with the procedure based on such false and incorrect information by continuing to refer to the denial of selection for the Persian Farsi vacant positions of "instructor," and "Assistant Instructor" for which Ardalan, indeed, had not applied. Based on such falsification of the facts of the Complaint the IRD investigator's findings were for DLI!

Regardless of what Ischa has done or has not done, the fact has remained that any references to the aforementioned "ranks" has been irrelevant as DLI has been hiring for the <u>multiple vacant positions of teaching Persian Farsi</u>, and <u>there is only one Persian Farsi language and not more</u>. So, such unlawful activities by the DLI EEO Manager have manifested her utter ignorance and only a means to make the Complaint without any merits and consequently, subject to dismissals.

The DOD IRD investigator, who had learned of the matter and had received Ardalan's objections, had responded to her that she could only investigate the issues that the EEO had accepted in her Complaint. It has been quite clear that all efforts have been made for a successful defense against Ardalan's Complaint of Continuation of Retaliation, in retaliation against her multiple EEO protected activities.

000159

## LEGAL ARGUMENT
## AGENCY'S ALLEGED "POLICY OF NO HIRE"

Similar to the scenario for the claim of 2006 when there was no written Policy adopted, to which Ardalan's then legal counsel had objected, in this Appeal Brief Ardalan will argue the following:

a. There is no showing that anyone with authority to do so has adopted any such uniform "policy" on behalf of the agency.

b. There is no writing evidencing such a policy or what disqualifications may be encompassed by such a policy or whether the policy may be waived in appropriate circumstances.

c. To the extent that any such uniform "policy" was present and used during the selection process, it cannot be said to have been legitimately or lawfully used since it was not published as part of the qualifications for the positions as required by 5 C.F.R. § 302.202 and 5 C.F.R. § 302.203 and such a publication is a precondition to use of any such policy.

d. Although DLI has claimed it has adopted the "Policy," in August 2009, under 5 C.F.R. § 302.203(a) as authority for the use of the "no-rehire" policy, based upon the 15 year old AWOL, the authority in the cited regulation is not self-executing; prior to use of a policy founded upon the cited regulation, the policy must be published, in accordance with 5 C.F.R. § 302.203, as part of the qualifications for an appointment and also it should have been posted on the vacancy announcements.

e. In *Raytheon* the no-rehire was a legitimate policy. (Id. at 540 U.S. 44 at 53). In the present case, there is no showing that any such policy was legitimately enacted or used as a uniform policy.

In the recently claimed "No hire Policy," similar to the above, it has been quite clear that DLI had not adopted any "No hire Policy" as claimed in the previous defense filed with the EEOC. Should it have adopted such a Policy, then the question arises as to for what reason a "Non Hire Policy" was allegedly signed by Commandant Sandusky (although no date has been placed under her signature), and became effective in August 2009? Ardalan's claims were for the period of mid-2006 – September 26, 2009, when she had contacted the DLI to file a Complaint.

Furthermore, Ischa has been claimed the incorrect date of Ardalan's contact with the EEO Office – October 26, 2009, when such a date as manifested on the e-mail correspondence of Ardalan has been utterly false!

Most significantly, on the DLI and the federal employment applications it has always asked the applicants: <u>"Have you been terminated from employment at a federal government within the past five years?"</u> Ardalan was terminated in October 1995; i.e., more than 14 years past that date. Such a belated alleged "No hire Policy," allegedly adopted in August 2009 against her employment applications, which filed between mid 2006 – August 2009, is not meritorious as it cannot be applied retroactively. For the above stated reasons, Ischa has omitted

17

Ardalan's EEO Complaints for the denial of employment in mid-2006, year 2008 and partial 2009, and has only referred to 2007.

Furthermore, Ardalan had not committed any grave wrongdoing, even though Agency's claim for the alleged AWOL has been utterly false. They had to get rid of Ardalan, who not only had filed multiple EEO Complaint in which she had objected to the violations of her federally protected rights, she had also reported the ongoing violations to the Army and DOD Inspector Generals. For the above stated reasons, on October 20, 1995, DLI management terminated Ardalan based on the alleged "AWOL" while she was on worker's compensation leave, and has been denying her re-employment even after 15 years. Most significantly, DLI contested the worker's compensation application and Ardalan was denied any benefits during her leave. The proffered reasons have been pretextual for which reason, all of the issues, dates and the list of the jobs applied have been tampered with. Agency's pretextual and conflicting claims for the adoption of the alleged unwritten "No Hire Policies of 2005" and the unenvorceable "No Hire Policy of 2009" have been clear evidence of pretext.

## STATEMENT OF LEGAL PRINCIPALS

A. A belated raising of a no-rehire policy has been judicially described as "fishy" and it may lead to a finding that the reason is a pretextual after-the-fact-justification. *Zaccagnini v. Chas. Levy Circulating Co.*, 338 F.3d 672, 678 (7th Cir. 2003).

B. A belated raising of a purported "unwritten policy" of uniformly refusing to re-hire individuals previously fired for misconduct may operate as a justification for a finding of pretext. See *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 569 (9th Cir. 2004), where the policy was "oral" (Id. at 568), on remand from *Ratheyon Co. v. Hernandez*, 540 U.S. 44 (2003), explaining:

"Where an employer has provided conflicting explanations of its conduct, a jury could reasonably conclude that its most recent explanation was pretextual. See *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 853 (4th Cir. 2001) ('[A] fact finder could infer from the late appearance of [the employer's] current justification that it is a post-hoc rationale, not a legitimate explanation for [its] decision not to hire [the employee].'); *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 813 (10th Cir. 2000) ('We are disquieted . . . by an employer who 'fully' articulates its reasons for the first time months after the decision was made.'); *Dominguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 432 (1st Cir. 2000). ('When a company, at different times, gives different and arguably inconsistent explanations [regarding its reasons for terminating an employee], a jury may infer that the articulated reasons are pretextual.'); *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996). ('An employer's changing rationale for making an adverse employment decision can be evidence of pretext.'), *opinion amended by* 97 F.3d 833 (6th Cir. 1996)."

C. A plaintiff may show that an oral policy of never rehiring anyone discharged for any violation of the personnel conduct rules, is "unworthy of credence " and at the pretext stage, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom on the issue of whether the defendant's explanation is pretextual. *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir.

000161

2004, on remand from *Ratheyon Co. v. Hernandez*, 540 U.S. 44 (2003).

D.  When the existence of a uniform policy or practice is in doubt, it cannot serve as a reason for an adverse action. *Piraino v. International Orientation Resources*, 84 F.3d 270, 275 (7th Cir. 1996), a case where there was no evidence of a written policy and no evidence of that even an unwritten policy existed. Use of the purported policy was rejected as basis for discharging the plaintiff.

The question arises as to which "No Hire Policy" indeed has been true, and if indeed, why the contradictory claims of 2005 and 2008? The answer has been that indeed no written "Policy" existed in 2005, and no such information was introduced or made part of the record in the vacancy announcements, as testified by Jennifer Amorin and Charlene Hogan, testimony that there was not written "Policy," and it was just a stated Policy. (Jennifer: TR. P. 17). They were informed of Ardalan's "countless EEO Complaints." (IR pp 25-29)

Furthermore, at no times during the testimonies of Jennifer Amorin, Charlene Hogan and Zhu, did anyone of them ever stated that Ardalan's termination was due to anything else other than the alleged AWOL. Clearly, the alleged misconduct "AWOL" would not cause the disqualification of Ardalan for re-employment, in particular, after 13-15 years. DLI has denied Ardalan re-employment only in retaliation against her protected activities.

E. The Agency Has The Burden Of Proving Disqualification Under 5 C.F.R. § 302.202 and § 302.203. The agency has the burden of proving disqualifying misconduct. *Knight v. United States Postal Serv.*, 79 M.S.P.R. 424 at P5, 1998 MSPB LEXIS 1025 at P4 (1998).

F. The Agency Has Mandatory Duties Of Establishing Qualification Standards For Appointments To Excepted Service Positions, Of Making The Standards A Matter Of Record, And Of Applying The Standards Uniformly To All Applicants.

1. "Before making an appointment to a covered position each agency shall establish Qualification standards, such as those relating to experience and training, citizenship, minimum age, and physical condition, that shall relate to the duties to be performed." *Knight v. United States Postal Serv.*, 79 M.S.P.R. 424 at P8, 1998 MSPB LEXIS 1025 at P6 - 7 (1998). [Emphasis added.], citing 5 C.F.R. § 302.202. On the DLI Qualification Standards there has not been any references made to any "No Hire Policy" – a clear proof that the alledged "Policy" was not complete and not yet enforceable! Also, refer to Para "G."

2. Each agency shall make its standards a matter of record in the appropriate office of the agency, and shall apply the standards for a position uniformly to all applicants, except for such waivers as are provided for a preference eligible." *Knight v. United States Postal Serv.*, 79 M.S.P.R. 424 at P8, 1998 MSPB LEXIS 1025 at P7 (1998). [Emphasis added.], citing 5 C.F.R. § 302.202.

G. An Agency May Include In the Standards Other Reasons for Disqualification, Such As Dismissal from Employment for Delinquency or Misconduct, But 5 C.F.R. § 302.203 Is Not Self—Executing.

000162

1. The qualification standards established by an agency or by an administrative level or subdivision of an agency may provide that certain reasons disqualify an applicant for appointment. The following, among others, <u>may</u> be included as disqualifying reasons: (1) Dismissal from employment for delinquency or misconduct. See 5 C.F.R. § 302.203(a).

2. The qualification standards established by an agency or by an administrative level or subdivision of an agency "<u>may</u> provide that certain reasons disqualify an applicant for appointment. 5 C.F.R. § 302.203(a). Criminal, infamous, dishonest, immoral, or notoriously disgraceful conducts 'may be included' as a disqualifying reason." *Id*. . *Knight v. United States Postal Serv.*, 79 M.S.P.R. 424 at P8, 1998 MSPB LEXIS 1025 at P8 (1998). [Emphasis added.]

3. Although OPM's regulation at 5 C.F.R. § 302.203 permits agencies to include certain reasons in its qualification standards that would disqualify persons entitled to priority consideration, <u>section 302.203 is not self-effectuating</u>. *Knight v. United States Postal Serv.*, 79 M.S.P.R. 424 at P9, 1998 MSPB LEXIS 1025 at P7(1998) [Emphasis added.], citing *Raicovich v. U.S. Postal Service*, 675 F.2d 417, 421-22 (D.C. Cir. 1982)

G. The Purpose Of Requiring An Agency To Adopt Disqualifying Factors In Their Qualifications Standards Is To Ensure That Agencies Apply The Standards For A Position Uniformly To All Applicants And Not Make Ad Hoc Decisions.  Requiring agencies to adopt disqualifying factors in their qualifications standards appears designed to ensure that agencies "apply the standards for a position uniformly to all applicants," 5 C.F.R. § 302.202, "<u>and not make ad hoc decisions</u>."*Knight v. United States Postal Serv.*, 79 M.S.P.R. 424 at P9, 1998 MSPB LEXIS 1025 at P8 (1998). [Emphasis added.], citing *Raicovich v. U.S. Postal Service*, 675 F.2d 417, 422 (D.C. Cir. 1982).

H. Unless the Agency Establishes In The Record That A Disqualification Rested Upon An OPM Or Agency Regulation, Its Action Cannot Be Sustained.  In a case where there is no indication in the record or in the testimony of the agency's witnesses that the agency disqualified an applicant under an OPM or agency regulation, a reversal and remand was ordered. *Knight v. United States Postal Serv.*, 79 M.S.P.R. 424 at P10, 1998 MSPB LEXIS 1025 at P 8, 9 (1998).

I. Where an agency has failed to consider material record evidence, the EEOC may reverse the findings of the agency.  See, for example, *Su-Chin Yee, Appellant, v. Marvin T. Runyon,Jr., Postmaster General, United States Postal Service, (Pacific/Western Region), Agency*, 1995 EEOPUB LEXIS 1283 at P9 and 22 (EEOPUB 1995).

## THE PROCEEDINGS

The record shows that none of the DLI CPO Management – Rick and/or Alvarado were called to testify although as substantiated by documentation in file, they have been the masterminds of the conspiracy against Ardalan.  These managers by instructing Ischa "not to entertain," Ardalan's EEO Complaint, have caused Ardalan's denial of rights.  The record also shows that only the two lower ranked CPO clerks, one, a retired employee, have been called to testify, although none of them have any managerial role on the decision not to employ Ardalan. However, their testimonies have revealed the blatant violations of the federal laws by CPO

000163

against Ardalan, who has been blacklisted, subjected to defamation and adverse employment references made against her.

Dr. Zhu testified that he would not hire Ardalan and the record also showed how during the administrative investigation, Zhu altered his testimony when it appeared that a document was placed on the conference table for him to read and to recite as the reason for not hiring Ardalan. Zhu simultaneously changed his testimony and while still sounded unassured of what he was reading, began to recite the text of the document placed in front of him and stated he was referring to the Regulation of No Hire 609-01. (IR, p.6, p10-p 11).

As stated in the earlier part of this Appeal Brief, Ardalan's package included a termination Form signed by Dean De La Selva. This termination letter is the same as SF-50. In 2004, Ardalan after then nine years of unemployment, applied to DLI for re-employment; however she was subject to verbal warnings and threats by Esther Rodriguez, CPO Manager/Supervisor, who told Ardalan if she did not produce the SF-50 Form to her, Esther would decline to process her employment application. Ardalan after spending hours of search in her records found the Form and produced to Esther Rodriguez. The reason for the request for production of SF-50 was that it no longer existed in the Personnel Files as DLI would not keep former employees files past five years of termination and by regulation files would be purged.

Esther in order to follow Dr. Clifford's orders not to re-hire Ardalan had to subject Ardalan to intimidation in order to solicit the Form SF-50 and to place it on top of any future applications which Ardalan would file for re-employment at DLI. Esther testified she placed Ardalan's SF-50 on top of the employment application and submitted it to the then newly hired Dean ShengSheng Zhu for the selection process.

Spurgeon Moore, Director, EEOCCRRA, without knowing the facts, has made the claim that such a document – SF-50 existed in Ardalan's file at DLI, when in fact, per the report of the several CPO staff to Ardalan, there was no record of Ardalan found at DLI. The fact that on the Application Form it has also inquired if the Applicant has been terminated from a federal agency 'within the past five years' from the time of the application, quite clearly has substantiated this fact. As one of the CPO staff expressed his concerns to Ardalan by stating

"We are all surprised as there is absolutely no trace of you and your record at the DLI CPO." Of course, Ardalan was not surprised as she had learned from another Army agency that they could not locate any of Ardalan's files in the record and in fact they were questioning if Ardalan indeed had worked at DLI? For this reason, Esther, who was quite well informed of such a matter, in order to obtain a copy of the Form SF-50 of Ardalan to place in the front of the application package, had subjected Ardalan to threats and intimidation and had conned Ardalan to produce to her the SF-50 Form. Esther then had placed the SF-50 Form in front of Ardalan's application package and had sent to the selecting officials.

As testified by Jennifer Amorin, she would place a large red label on which she had written "terminated for cause," on the cover of the application package of Ardalan and would sent it to the selecting official! Jennifer would prevent any problems as the selecting official would deny Ardalan selection for the vacant position. (Jennifer TR: pp 27-32)

000164

Should Ardalan, who was subject to Esther's threats, not have produced this document – SF-50 to her, DLI would have never been able to locate and to use such a document against Ardalan. Furthermore, Director Moore would have never referred to it. It has been quite clear that per the DLI and federal regulations, after five years from the date of termination, the record is purged, for which reason, on the application forms, one of the questions has been "Have you been terminated from a federal Agency within the past five years?"

Obviously, when Ardalan since 2004 to present has been filing employment applications, it has been many years past the five year statute of limitation. However, given the fact that Agency has been trying to justify its violation of the federal laws by retaliation against Ardalan's prior EEO activities, it has opted to use an outdated document, which the CPO Manager by threats and technique of intimidation had obtained from Ardalan. By such an unethical technique, since 2005 to present, the perpetrators have been using this document against Ardalan as a tool to justify the denial of employment to Ardalan.

Indeed, what a number of federal employees - the conspirators at DLI have done to Ardalan, who has been denied her profession and livelihood in the United States of America, has been unprecedented. Since Ardalan's unjustifiable termination to date, she has been denied employment at DLI and other local colleges that have received grants from DLI. On or about 1997, during a visit to a Job Fair, the recruiters from the local college discussed the then vacancies with Ardalan. However, as soon as they learned Ardalan's name, they stated to her that they had strict orders from DLI not to hire Ardalan. Later on by reading an article in the local newspaper, Ardalan learned DLI had awarded the College the amount of $50,000.00. It would not be a surprise to hear that the College would deny Ardalan employment. Such activities against a federal employee who has engaged in protected EEO activities, has not just been discrimination, but criminal.

Even to date, none of the DLI vacancy announcements on the USAJOBS.GOV, or at least the ones Ardalan has applied for, have included the qualification standards established by DLI that certain reasons disqualify an applicant for appointment. The following, among others, may be included as disqualifying reasons: (1) Dismissal from employment for delinquency or misconduct. See 5 C.F.R. § 302.203(a).

## ESTABLISHING PRIMA FACIE CASE OF REPRISAL
Mack vs. Dept. of the Army, EEOC Appeal No. 01921446 (May 6, 1993).

*To establish a prima facie case of reprisal, the complainant must show: (1) that she engaged in activity protected by Title VII of the Civil Rights Act of 1964, as amended; (2) that management was aware of the protected activity; (3) that subsequent to the protected activity, her employment situation was adversely changed or affected; and (4) that there is a causal nexus between the protected activity and the adverse action or the adverse action occurred with such a period of time that a retaliatory motivation may be inferred or that other evidence exists so as to cause one to reasonably conduce that there was a nexus between the two actions. Mack vs. Department of the Army, EEOC Appeal No. 01921446 (May 6, 1993).*

Re: (1) There is no dispute that Ardalan has engaged in protected activities under Title VII. The dates of the activities include six consecutive Complaints filed with the EEO Office from 2004 to 2009, during which entire time, there were several administrative investigations,

000165

hearings, and appeals filed to the EEOC, all of which procedures and activities have been documented and at times have overlapped.

Re: (2) Per the "High Priority Confidential" E-mails exchanged among Rick and Ischa, and Alvarado, discussing how to process Ardalan's EEO Complaint, CPO Supervisor and Rick were referring to Ardalan's EEO "10 year" ongoing EEO grievance procedures, a statement, which clearly has manifested Donovan was indeed quite familiar with Ardalan's protected activities. Indeed, the contents of the E-mails quite clearly have manifested that Rick" had engaged in conspiracy by instructing Ischa "Not to entertain Ardalan's EEO Complaint," blatant violation of the federal laws! (Jennifer TR pp 73-76)

Furthermore, there were continual ongoing administrative grievance procedures at DLI for Ardalan's six consecutive EEO Complaints since 2004 to August 2009, all of which had required fact finding interviews and investigations, and some of which required hearings, and appeals. So, DLI management was fully aware about Ardalan's EEO protected activities. Jennifer Amorin in her testimony refers to Ardalan's continual EEO protected activities, for which administrative procedures, the CPO had to compile documents Jennifer. (JenniferTR p.25, p. 29)

Re: (3): There is no dispute that Ardalan for several years had applied for employment at DLI and all of her applications had remained unanswered, as documented on the site of the USAJOBS.GOV, and was denied and she was adversely affected due to the denial of her protected rights. Refer to Jennifer Amorin's entire testimony. (JenniferTR pp. 25-34)

Re: (4): There is no dispute that management was aware of the protected activities; management was determined to deny Ardalan employment as all of her employment applications since 2004 to date, in spite of her outstanding qualifications, have been denied; and foremost, as supported by the interoffice memoranda between the Manager of Civilian Instructors, Rick Donovan, to the EEO Manager, Ischa, as to "not to entertain Ardalan's EEO Complaints, there has been retaliatory motivations inferred from the adverse actions. Donovan's instructions to Ischa has manifested he was well aware of Ardalan's previous unsuccessful ongoing EEO protected activities, for which reason under Donovan's direction as to the dismissal of Ardalan's Complaint, Ischa, EEO Manager, had engaged in sabotaging the EEO Complaint by the omission of the facts and dates in order in preparation of a facially justifiable dismissal.

Worst yet, the DLI CPO has engaged in the production of a black list in which Ardalan's names will be included and the list will be produced to various language schools at DLI who would be warned not to hire Ardalan. (Jennifer R pp. 29-31)

## ESTABLISHING PRIMA FACIE CASE OF REPRISAL
McDonnell Douglas vs. Green, 411 U.S. 792, 802 (1973)

*A plaintiff can establish a prima facie case of discrimination and retaliation under Title VII by establishing that (1) he or she participated in protected activities; (2) he or she applied and was qualified for a job for which the employer was seeking applicants; (3) he or she was rejected for the position despite his or her qualifications; and (4) the position remained open after his or her rejection and the employer continued to seek applications from other people with*

000166

*similar qualifications to the plaintiff. McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973). In Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981), the Supreme Court stated that"[t]he burden of establishing a prima facie case of disparate treatment is not onerous."*

Re: (1) There is no dispute that Ardalan has participated in protected activities under Title VII. The dates of the activities include six consecutive Complaints filed with the EEO Office from 2004 to 2009, during which entire time, there were several administrative investigations, hearings, and appeals filed to the EEOC, all of which procedures and activities have been documented and at times have overlapped.

Re: (2): There is no dispute that Ardalan for several years had applied for employment at DLI for the available multiple vacant Persian Farsi positions.

Re: (3): There is no dispute that Ardalan despite her outstanding qualifications for the multiple vacant positions of teaching Persian Farsi was rejected for any of the multiple vacancies continually announced, even to date. Testimonies have revealed the orchestrated retaliation against Ardalan for her multiple EEO protected activities, by the production of a black list to dissuade management to hire Ardalan.

Re: (4) There is dispute that there were <u>multiple vacancies for the same Persian Farsi position,</u> and DLI continually sought for candidates, hired more candidates and continued to advertise for the same vacant Persian Farsi positions, even to date, as advertised in the site of the USAJOBS.GOV, and as manifested on the list of Ardalan's jobs applied.

## CONCLUSION

Ardalan respectfully request the EEOC to reverse and remand the case with instructions as to what is required in the evaluation of the "no-rehire policy" as evidence impacting the case and as to all of the selections in question on the issues of both pretext and reprisal, as well as on the issue of establishment of a prima facie case. Ardalan also asks that the EEOC to grant her full discovery on the purported "no re-hire policy" and on the number of all applicants hired for the Persian Farsi vacant positions, including the list of the selected candidates hired at the level of "Assistant Professor," since mid-2006 to present. The interests of justice would be advanced by granting such discovery particularly where, as here, per Agency, the purported policy was allegedly invoked in August 2008, although was not part of the vacancy announcement and application package, when Ardalan had already filed for employment since mid 2006, concurrent with her other pending administrative procedures for the denial of employment. Furthermore, the EEOC order Agency to hire Ardalan at the academic level she is qualified for – "Associate Professorship" in addition to award her all of the back pay and lost wages entitled to her since the denial of employment, i.e., mid-2006 to the day her employment would be enforced, in addition to all of the financial losses resulted from the lack of employment. Ardalan requests the EEOC for an award of punitive damages for Agency's retaliation which has been the result of malice or reckless indifference to Ardalan's federally protected rights. The EEOC to award Ardalan the maximum amount prescribed by the EEOC for the intentional discriminatory act against Ardalan and for her emotional distress resulted from Agency's violation of the federal laws and for denial of Ardalan's rights of employment. Lastly, the EEOC order the Agency officials and the EEO, who so vindictively have placed Ardalan's Social Security in file, to

000167

remove it from the record and to contact other Agency officials who have received the information to order to erase the Social Security number from the record.

Respectfully submitted, this 12th day of November 2010.

Ferial Karen Ardalan, Appellant

000163

## PROOF OF SERVICE

On November 12, 2010, I served the within APPELLANT'S BRIEF IN SUPPORT OF APPEAL, Including the 33 page supportive evidentiary document, on the agency by mailing true copies of the same at Pacific Grove, California, first class postage fully prepaid, and deposited in a U.S. Mailbox in Pacific Grove, California in sealed envelopes addressed as follows:

US Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Commander,
Defense Language Institute Foreign Language Center
Presidio of Monterey, CA 93944-3327

Deputy for Equal Employment Opportunity Compliance and Complaint Review
Dept. of the Army
Attn: SAMR-EO-CCR
1901 S. Bell. St., Ste. 109 B
Arlington, VA 22202

Commander, Headquarters
U.S. Army Training and Doctrine Command, Fort Monroe
ATTN: ATCS-E
5 North Gate Road
Fort Monroe, VA 23651-5000

Presidio of Monterey EEO Office
ATTN: IMWE-POM-EEO
1710 PVT Bolio Road, Building 518 (Tin Barn)
Presidio of Monterey, California 93944-5006

Dated this November 12, 2010

Ferial Karen Ardalan, Appellant
P.O. Box OD
Pacific Grove, CA  93950
Tel/Fax: 831-655-5350

26

000169

 **YAHOO!** MAIL
Classic

---

**Filing a Complaint of Discrimination for the Denial of Employment at DLI**

Saturday, September 26, 2009 9:15 AM

**From:** "Ferial Ardalan" <ferialardalan@sbcglobal.net>

**To:** monica.altamirano@us.army.mil

---

September 26, 2009

EEO
DLI

Att: Ms. Monica Altamirano
EEO Counselor

Dear Ms. Altamirano
Since I do not know the name of the present EEO Manager at DLI, I am writing this e-mail to your E-mail address. Please pass this E-mail to the proper official at the DLI EEO.

I hereby would like to request the assignment of an EEO Counselor to conduct the required procedures for the initial fact finding for an EEO Complaint I am filing with the DLI EEO. The Complaint is about Denial of Employment for the multiple teaching position vacancies in the Persian Farsi Department. Since 1995 to present, I have been denied employment at the Persian Farsi Department in retaliation against my protected activities, including filing multiple EEO Complaints and lawsuits, to no avail. DLI Officials have continued to deny me employment in retaliation against my protected activities. Meanwhile, they have continued to advertise for multiple vacancies for the Persian Farsi positions on line, including but not limited to the USAJOBS.Gov, and even Craigslist, not to mention other media.

I request (1) confirmation that you have received this e-mail and (2) the assignment of an EEO Counselor ASAP! Thank you.

Sincerely,

Ferial Ardalan
P.O. Box OD
Pacific Grove, CA  93950
(831) 655-5350

---



000170



FERIAL ARDALAN – CASE INFORMATION

| AGENCY CASE # | EEOC # | IRD INVESTIGATOR | STATUS |
|---|---|---|---|
| ARPOM04OCT07114 | 370-2005-00540X & 370-2006-00031X | CLAUDE FRANSIS | –EEO DECISION DTD 05/02/06<br>NO DISCRIMINATION – AJ PLAYER<br>–FINAL AGENCY ACTION DTD 05/19/06<br>IMPLEMENT EEOC DECISION<br>--COMPLAINANT APPEALS DECISION 06/28/06<br>–EEOC OFO DECISION, APPEAL #0120064058 DTD 03/20/08<br>NO DISCRIMINATION<br>--COMPLAINTANT'S REQUEST FOR RECONSIDERATION DTD 04/19/08<br>(NOTE: ARPOM04OCT07114 CONSOLIDATED WITH ARPOM05MAR07655) |
| ARPOM05MAR07655 | 370-2006-00031X & 370-2005-00540X | LYDIA GRANDBOIS | –EEOC DECISION DTD 05/02/06<br>NO DISCRIMINATION – AJ PLAYER<br>–FINAL AGENCY ACTION DTD 05/19/06<br>IMPLEMENT EEOC DECISION<br>--COMPLAINANT APPEALS DECISION 06/28/06<br>–EEOC OFO DECISION, APPEAL #0120064058 DTD 03/20/08<br>NO DISCRIMINATION<br>--COMPLAINTANT'S REQUEST FOR RECONSIDERATION DTD 04/19/08<br>(NOTE: ARPOM05MAR07655 CONSOLIDATED WITH ARPOM04OCT07114) |
| ARPOM06JUN02179 | 550-2007-00105X | MARIE ROBICHAU | –EEOC DECISION DTD 03/21/08 –<br>NO DISCRIMINATION – AJ PLAYER<br>–FINAL AGENCY ACTION DTD 04/02/08<br>IMPLEMENT EEOC DECISION |
| ARPOM07FEB00475 | 550-2007-00417X | JO ANNE BURSON | --COMPLAINANT'S REQUEST FOR HEARING DTD 09/07/07<br>--EEOC RECEIVED CASE FILE 09/21/07<br>--PENDING EEOC DECISION<br>(NOTE: ARPOM07FEB00475 CONSOLIDATED WITH ARPOM07AUG03511) |
| ARPOM07AUG03511 | 550-2008-00195X | MARGARET O'KEEFFE | --COMPLAINTANT'S REQUEST FOR HEARING DTD 03/11/07<br>--PENDING EEOC DECISION<br>(NOTE: ARPOM07AUG03511 CONSOLIDATED WITH ARPOM07FEB00475) |

# Facsimile Transmittal Cover Sheet

**Defense Language Institute Foreign Language Center
and Presidio of Monterey
Equal Employment Opportunity Office
ATZP-EEO, Bldg. 518 (Tin Barn)
Presidio of Monterey, California 93944-5006**

Tel: (408) 242-5105/5692  DSN  878-5105/5692
FAX: (408) 242-5814  DSN  878-5814

TO: _Dick Brennan_

ORG: _STA_

FAX: _6399_

TEL: _6414_

TOTAL PAGES (INCLUDING COVER SHEET) __3__

FROM:  F. Kathryne Burwell      (    )
       Sieglinde Glover         (    )
       Paul Holm                (    )
       Paulette Walker          ( X )

DATE: _8/13/96_

SUBJECT: _Ardalan's ltr of July 16_

NOTE: _will also put this one e-mail_
_for your revisions_

07969

3

000172

December 20, 2009

Ferial Karen Ardalan
(Aggrieved/Complainant)
P.O. Box OD
Pacific Grove, CA 93950
(831) 655-5350

Ms. Ischa W. Donahue  (EEO Manager)
Defense Language Institute
Presidio of Monterey, CA 93944-5066
ATT: IMWE-POM-EEO

**Re:  DA Docket No. ARPOM09OCT05023**

Dear Ms. Donahue:

I am in receipt of the **revised/second  EEO Acceptance of the Formal
Complaint**, dated December 10, 2009, **postmarked December 15, 2009.**

The following is also my **revised/second Objection to the abovementioned EEO
Acceptance Letter of the EEO Complaint.**

The EEO Manager, Ms. Ischa W. Donahue has issued an Acceptance letter in
which the most significant phrase of the **CONTINUATION OF RETALIATION
SINCE LATE 2006,** has been omitted from the Acceptance Letter.  This omission
has been in view of the long list of the positions I, the aggrieved have applied, all
of which applications, except for the two applications for the positions of
**WETY06FPS041OC** and **WETY06FPS042OC** filed on **October 4, 2006,** which
was allegedly investigated by the IRD investigator on or about **January 14, 2008.**
During the investigation, when I referred to the Letter of objection to the letter of
acceptance in which my claims and issues were not included, the unprofessional
investigator, while chewing a pink bubble gum with a strong and disturbing odor
created in the Conference room, quite impolitely asked me to leave the conference
room where she continued with her so called investigation of only the issues
which the DLI EEO had accepted.

Similarly, in the Letter of Acceptance issued by Ms. Donahue regarding the
Complaint of Continuation of Retaliation, the Letter of Acceptance contains
(1) incorrect dates of contact between the EEO and me, the aggrieved,

1

(2) incomplete list and the two+ years dates of the multiple vacancies in the Persian Farsi positions and ranks I had applied for and yet denied, when the DLI labor counsel and the EEO have had full access to the list of applications I had submitted, and, foremost,

(3) incomplete list of the **Agency key witnesses** named in my Formal Complaint, by the omission of the name of Commandant Sue Ann Sandusky, Proposed Agency Witness and Agency Official, responsible for declining to take corrective measures by ordering the official at the Persian Language School to rehire me, Ferial Ardalan and to compensate her for financial loss resulted from the continuation of retaliation and denial of employment at DLI - a federal government agency under her Command.

My objections, as follows:

**SUBJECT:  EEO COMPLAINT OF CONTINUATION OF RETALIATION BY THE DENIAL OF EMPLOYMENT SINCE LATE 2006 TO PRESENT - FOR MULTIPLE POSITIONS IN PERSIAN FARSI – TEACHING, OR CURRICULUM DEVELOPMENT AS POSTED ON USAJOBS.GOV FOR THE RANKS OF ASSISTANT PROFESSORSHIP, EQUIVALENT TO (GS-11) & ASSOCIATE PROFESSORSHIP, EQUIVALENT TO (GS-12), AS APPLIED ON THE USAJOBS.GOV, AS FOLLOWS:**

**JULY 10, 2006** - WTEY06FPS0410C
**OCTOBER 4, 2006** - WTEY06FPSFD02, 3 POSITIONS APPLIED, WTEY06FPS0420C, WTEY06FPS0410C
**DECEMBER 5, 2006** - WTEY06FPSFD01
**DECEMBER 8, 2006** - WTEY06FPSFD01, WTEY06FPSETTS02, WTEY06FPS0410C,

**WTEY06FPSETTS02, WTEY06FPS0410C, WTEY06FPS0420C Allegedly investigated by the IRD Investigator.**

**DECEMBER 12, 2006** - WTEY06FPSFD02, WTEY06FPSETTS02, WTEY06FPS0410C
**APRIL 10, 2007** - WTEY07FPSFD05,
**APRIL 13, 2007** - WTEY07FPS837727-05, WTEY07FPSPERSIAN-FARSI
**JULY 3, 2007** - WTEY07FPSPERSIAN-FARSI, WTEY07FPSPERSIAN-FARSI

2



AUGUST 14, 2007 - WTEY07FPSPERSIAN-FARSI,WTEY07FPSPERSIAN-FARSI

AUGUST 31, 2007 -  WTEY07FPSPERSIAN-FARSI

FEBRUARY 11, 2008 - WTEY08FPSPERSFARS, WTEY08FPSPERSFARS

DECEMBER 14, 2008 - WTEY08FPSPERSFARS

DECEMBER 15, 2008 - WTEY08FPSPERSFARS, WTEY08FPSPERSFARS

MAY 21, 2009 - WTEY09FPSFARS

MAY 30, 2009 - WTEY09FPSFARS

JUNE 30, 2009 - WTEY09FPSFARS

JULY 4, 2009 - WTEY09FPSFARS

JULY 13, 2009 - WTEY09FPSFARS

JULY 16, 2009 - WTEY09FPSFARS

JULY 17, 2009 - WTEY09FPSFARS

JULY 21, 2008 - WTEY09FPSFARS, WTEY09FPSFARS

JULY 23, 2009 - WTEY09FPSFD05

JULY 31, 2009 - WTEY09FPSFD04,  WTEY09FPSFD04

AUGUST 1, 2009 - WTEY09FPSFARS

AUGUST 25, 2009 - WTEY09FPSFARS

**The Above list has already been produced to the DLI EEO and is also posted on the USAJOBS.Gov site of my Employment Application records.** All of the vacant positions denied me prior to the above list, were applied directly to DLI and were processed through the biased administrative procedures in favor of DLI! There have been several additional denied positions since the above August 1, 2009 to present, which are not included in this Complaint and will be subject to a new Complaint to be filed in the future!

## Subject: <u>Objections to The Letter of Acceptance:</u>

<u>1- Incorrect Identification of All Issues of the Complaint of the Continuation of Retaliation by the Several Year Denial of Employment for a variety of Persian Farsi Vacant Positions for Teaching or Curriculum Development Advertised on the USAJOBS.Gov site, the ranks for which positions have been repeatedly specified as the Assistant Professorship  and Associate Professorship, for the following reasons:</u>

<u>a. Cover up of the Blatant Continuation of the Violations</u> Claim in the Complaint in order to minimize the grave violations of the self

3

13

000175

righteous officials who truly believe DLI has been their own personal domain and therefore, have continued with their violations of the federal and constitutional laws of the United States of America by Denial of Employment to the Aggrieved, who has continued to file employment Applications on the USAJOBS.Gov, – a  site for the federal government employment organization.  The Aggrieved has repeatedly referred to the phrase -- <u>CONTINUATION OF RETALIATION</u> Doctrine in her informal and Formal Complaint and the EEO Manager without any supporting evidence and proof has omitted this phrase from the Formal Complaint and has made the incorrect and unsubstantiated claim that the Continuation of Retaliation allegedly have been adjudicated in the past.  However, if not for the past several years, at the least, since late 2006, Agency has continued to refuse to hire the Aggrieved.

b. Intentional Neglect to Correct Wrongs brought on the Aggrieved reported to the Current DLI Commandant Colonel  Sue Ann Sandusky, who has Declined to Stop the Continuation of the Violations of the Federal Laws Under her Command and Has not Made any Efforts to Re-employ the Aggrieved and/or to Compensate for her Losses Brought about by the Denial of Employment.

The following is the Formal Complaint of Ferial Karen Ardalan against the Defense Language Institute, Presidio of Monterey (POM), CA 93944.

Section 10: Explain When and How You Were Discriminated Against:

## CONTINUATION OF RETALIATION

I have engaged in several protected activities - Filing EEO Complaints and lawsuits for discrimination & retaliation.  Since 2006, following the EEOC hearing, to date, I have applied to at least <u>30+ Persian Farsi</u> vacant positions.  Agency has declined to hire me.  Dr. Sheng Shen Zhu during the IRD investigation of my former EEO Complaints had stated he had received adverse references from De La Selva, former Dean against whom I had filed EEO Complaints.  Zhu Stated the reason for not rehiring me.  DLI, in need of Persian Linguists, has posted on Craigslist & yet is not hiring me.  My pleading with the present Commandant Sue Ann Sandusky has remained unanswered or that Command had declined to correct the wrongs brought on

4

me by the denial of my rights & employment. I have suffered immensely and been afflicted with severe emotional distress & financially.

Section 11: Name of Organization Where Alleged Discrimination Occurred.
Persian Language Department Multi Language School
Defense Language Institute, Presidio of Monterey, CA

Date of Initial Contact with the EEO Official: Sept. 26, 2009
Date Notice of Right to File a Formal Complaint of Discrimination Received:
November 13-14, 2009

WHAT RELIEF ARE YOU SEEKING TO RESOLVE THIS COMPLAINT:
- Employment for the positions of Persian Farsi Teaching
- Back pay since July 10, 06 to present - July 2006 was the beginning of the reprisal followed by the admin. Hearing.
- Compensation for damages resulted from emotional distress.

16. LIST NAME(S) OF WITNESS (ES) AND BRIEFLY STATE WHAT INFORMATION WITNESS MAY CONTRIBUTE TO THE INVESTIGATION OF YOUR COMPLAINT.

1) - Commandant Sue Ann Sandusky.
Commandant has received my grievances re: Denial of Employment & Continuation of retaliation & has declined to correct the violations of the Fed. Laws.

2) - Dr. Sheng Shen Zhu - Dean of School - Multi Languages.
He has testified he would not hire me because of adverse employment references.

My General Objections:  The ranks for which I had applied, have not been Assistant Instructor or Senior Instructor, but Assistant Professor and Associate Professor as posted on my Job Applications, for which vacancies I am fully qualified.

The dates of the contacts by the two EEO Counselors, who had produced to me the preliminary Complaint Forms have been incorrect. The dates of my contact and my Complaint have been timely.

5



000177  15

The Claims for the **Continuation of Discrimination and Retaliation** for the denial of 30+ Job applications of multiple and multiple vacancies, from **July 2006 to present have been omitted from the Acceptance letter.**

It has been quite clear that all of the above incorrect information have been planned at the direction of Mr. Michael Halperin, the DLI labor counsel, who should not even be involved in such early stage of the Complaint processing. Such interventions by labor counsel has been in order to accommodate the violators of the Federal Laws and cover up the ongoing violations of the Federal laws and the denial of my rights!

I also fully understand that the DLI Management, the EEO Office and the labor counsel have absolutely no fear of any potential liabilities and/or retribution by the EEOC or any government officials, who have declined to investigate the ongoing violations – biased Complaints processing, tampering with the documents and complaints not to mention the shredding of multiple EEO Complaints files, which I, personally had witnessed on two of my visits to the DLI EEO Office, during the 1995-6 ongoing Army Inspector General's Investigation of the DLI and the EEO Office.

I will refer to my objections to the Letter of Acceptance of the Formal Complaint in which all of the issues, quite intentionally, have been prepared in order to subject the Complaint to a facially justifiable Dismissal and to cover up the several year violation of the federal laws and my rights -- all efforts made in preparation for a justifiable dismissal of the Complaint.

I also object to the DLI management's unethical efforts to post a delinquent belated response on the Application Processing site on the **USAJOBS.Gov, effective December 10, 2009, claiming that the three year un-responded multiple employment applications have been allegedly forwarded to the DLI selecting official for selection, when in fact prior to** December 10, 2009, the information on that site had manifested the applications had remained unanswered!  Meanwhile, DLI, in search of Persian Farsi linguists has continued to recruit and hire applicants for the vacant positions I had applied and yet had been denied!

Please note: Such delinquent and untimely modification of the application site on the USAJOBs will manifest the ill-intent of the DLI officials, who have engaged in the violations of the federal laws by the denial of several year employment to

the Complainant, when in fact, since July 2006 to present, DLI has hired multiple applicants, and surprisingly, has even announced vacancies on the site of Craigslist, while has denied the aggrieved even a response to her applications not to mention the right of employment.

## The following are the specifics of my objections to the DLI EEO's bad faith intent to subject my Complaint to dismissal by the Omission of the Phrase:

**(a) CONTINUATION OF RETALIATION,**

**(b) Incorrect Identification of the Issues of my Formal Complaint for Continuation of Retaliation,**

**(c) Omission of the facts stated in the Complaint,**

**(d) Incorrect references to the vacant positions and their assigned numbers and dates Agency had received applications starting July 10 2006 to Sept. 26, 09, when the Complainant had contacted the DLI EEO Office.**

**(e) Omission of the higher grade of Associate Professorship in the Second Letter of Acceptance received on December 18, 2009, contrary to the first Letter of Acceptance in which the position of Assistant Professorship was omitted – all efforts made in order to accommodate the federal employees and their top management at DLI, to continue with their violations of the federal laws,**

**(f) Omission of the name of Commandant Sue Ann Sandusky, who has declined to prevent such blatant and unlawful violations of the federal laws and human rights of an innocent female former employee- thereby denying me, an aggrieved my federal and constitutional rights -- employment for several years and any enjoyment of life as entitled to any citizen of this Country.**

Objection No. 1: Re: Issues of the Complaint addressed to Ms. Ischa Donahue-EEO Manager:

A- As I stated during our brief phone conversation on December 10, 2009, the

7

000179  17

issues are utterly incorrect.  **In my Informal and Formal Complaint, I have repeatedly Claimed Continuation of Retaliation by the Denial of Employment, and yet, you, quite intentionally have continued to Omit this Phrase from the Complaint.**

B- In my Complaint, I have not addressed any Job Applications for any of the lower ranked positions of **Assistant Instructor or Instructor, which have been for Applicants with or without any high school degrees.**  You have addressed the lower rank jobs, for which I have not applied, while, quite intentionally, you have omitted my 30+ vacancy announcements for the positions of **Assistant Professorship** and **Associate Professorship**, which are equivalent to GS-11 and GS-12, respectively!

C- As Dr. Sheng Shen Zhu, Dean of the Multiple Language School at DLI, during the previous administrative investigations for my complaints of Denial of Employment testified, because of my education and experience, should the DLI have hired me, I would have been hired at the level of **Associate Professor** at DLI.

D- As I stated to you during our phone conversation of December 10, 2009, the USA Jobs applications have required the Applicant to indicate the rank for which she/he would be willing to accept.  Based on my professional experience and Higher Education Degrees, I have always applied for the **Rank of GS-11 or GS-12, which are equivalent to Assistant Professorship or Associate Professorship.**  I had not applied for the positions of Assistant Instructor or Instructor positions which are for the applicants who have lacked any college education or possibly high school degrees.

E- Per the USAJOBs site of my Jobs Applied, up to December 10, 2009, I have applied to more than 30+ vacancies in the Persian Farsi positions at the ranks of GS-11 and GS-12, all of which applications have remained unanswered. **(Please see the Documents I had produced to you and the EEO Counselor in response to your request for the list of the positions applied and denied in addition to the information on the USAJOBS which have been tampered with in bad faith, on or about December 9-10, 2009, following which date, you have produced to me the letter of acceptance of this Complaint while you have referred to the aforementioned incorrect information).** The issues addressed in the Letter of Acceptance of a Complaint have been utterly Incorrect and Baseless.

F- You have declined to include in the Acceptance letter of my Formal Complaint

*8*

multiple vacant positions of **Assistant Professorship**, the application for which had remained unanswered on the USAJOBS site of my applications, when quite intentionally you have referred to the low level positions of Assistant to Senior Instructor and Senior Instructor, for which I had not even applied and would be overqualified.

G- Per Dr. Zhu's own testimony, he was unable to find applicants for the ranks of Associate Professorship, for which reason, he has been hiring Assistant professors.

**Objection No. II:**  With respect to the chronology of my Complaint processing, the following are the dates of the contacts and document exchanges between the DLI EEO and me.

**September 26, 2009** - Initial contact with the EEO Office, when I contacted Ms. Monica Altamirano, EEO Counselor, who had processed several of my previous EEOC Complaints.

**September 28, 2009** - Five E-mail contact in addition to phone contacts with Ms. Estella Sanchez, who was then the Official EEO Counselor. I was produced with the initial Complaint processing forms.

**October 1 and 2, 2009:** Additional Fax and Contact with Ms. Sanchez.

**October 7, 2009** - Quite to surprise of the Aggrieved, Ms. Donahue, EEO Manager, via e-mail requested information on the Case.

**October 28, 2009** - The Complainant via facsimile transmission produced Ms. Dabeneh, the signed copies of the Notice of Rights and Responsibilities.

**October 29, 2009** - Ms. Reem Dabeneh, the Second EEO Counselor via e-mail requested list of the jobs the Complainant had already produced to Ms. Donahue.

**October 29, 2009** - The Complainant via a nine page facsimile transmission produced a complete list of the jobs she had applied and yet was denied employment.

**November 5, 2009** - Ms. Reem Dabeneh sent the Complainant letter of Final EEO Counseling and also the letter of right to file a Formal Complaint. She then while quite shaken and sounding frightened, stated to the Aggrieved "I hope they will

9

satisfy you." She then hung up!  No discussion regarding the Final Counseling took place!

**November 6, 2009** - Estella Sanchez, the first EEO Counselor, via e-mail, produced the Complainant the Notice of Right to Sue.

**November 23, 2009** - Complainant via facsimile transmission produced a copy of the Formal Complainant.

**November 23, 2009** - Aggrieved via e-mail wrote to Ms. Donahue and reiterated the issues of her Complaint to her – efforts which remained unsuccessful as Ms. Donahue, by ignoring the Objections of the Aggrieved, continued with the omission of the issues and facts of the Complaint as mentioned herein above.

**December 2, 2009** -  Ms. Donahue, via e-mail acknowledged receipt of the Formal Complaint.

**December 2, 2009** - Complainant, via e-mail acknowledge receipt of Ms. Donahue's notice of the acknowledgment of the receipt of Formal Complaint and informed the Complainant she would notify her of her decision while Ms. Donahue copied in the DLI Labor Counsel.

**December 2, 2009** -  Complainant requested Mr. Donahue's permission to submit the typed version of the same handwritten Formal Complaint as the typed version would have been more presentable than the poorly prepared hand written version which was prepared by the Complainant's then minor injured hand.  Ms. Donahue did not respond!

**December 9, 2009** - The Complainant received Ms. Donahue's Notice of Acceptance of Discrimination Complaint, the contents of which have been utterly erroneous and unrelated to the issues of the Complaint addressed throughout the above-mentioned communications activities.

**December 9, 2009** - The Complainant contacted Ms. Donahue by phone and informed her that she would produce the letter of Objections to the Issues of the Complaint stated in Ms. Donahue's letter of Acceptance of the Complainant.  Ms. Donahue informed the Complainant she would enclose the Objection letter in the file; however, she would not correct the incorrect information placed in the Letter of Acceptance!

*10*                              000132        20

**Above has been my objection to the Second Letter of Acceptance of Formal Complaint** which I will continue to address during any formal Complaint processing and also before any other forum on my grievances against the several year denial of my rights by a number of federal employees, all of whom have enjoyed the protection of a federal government organization although they have been violating the laws of the Federal laws of the United States.

Sincerely,

Fenal K. Ardalan